WILLIAM A. MERRIAM *vs.* PINE CITY LUMBER COMPANY.

February 6, 1877.

**Where Evidence Conflicts, Jury must Decide.**—Whenever the evidence adduced in reference to any material fact in controversy is sufficient fairly to raise an issue proper for the consideration of the jury, it should be submitted to them, and their decision thereon is final.

**Evidence—Intent with which Note was Given.**—Whether, in the giving of certain notes by defendant to plaintiff, a certain claim for stumpage was taken into account by them, or not, cannot be established or disproved by evidence showing the secret intention or understanding of one of the parties to the notes.

**Trial—Error Cured by Matter Subsequent.** — An error committed in overruling a question put to a witness is cured if the witness subsequently, by permission, testifies fully in regard to the subject of such enquiry.

**Action by Debtor on Promise to Pay his Debt—Measure of Damages.**—Upon the breach of a valid promise to pay his debt to a third party, such promisee may maintain an action against the promisor, without first paying the debt himself.   The measure of damages in such case is the amount of the debt agreed to be paid.

**Waiver of Objection to Defective Pleading.**—A defective pleading, clearly amendable in the discretion of the trial court, cannot be taken advantage of in this court by a party who had an opportunity to make his objection to it in the court below, but omitted so to do.

**Charge to be Construed as a Whole.**—In determining the meaning, and probable effect upon the jury, of a modification by the court of any specific request asked by either party, reference will be had to the entire charge as given upon the subject.

**False Representations—When Statements are Actionable and when Not.**—A party is liable for an injury occasioned to another by a false statement, the truth of

which he positively affirms, when made with intent to deceive, and under circumstances inducing a belief in its truth, whether such statement is understood to be made upon personal knowledge, or upon information derived from others; otherwise, however, if such statement be but the expression of a belief, founded upon information, and without any such fraudulent intent.

The plaintiff, in his complaint, alleges that, on March 13, 1873, he sold and delivered to the defendant 1,616,602 feet of pine logs, at the agreed price of $7.25 per thousand feet, and amounting in all to $11,720.36; that no part of this sum has been paid, except the sum of $7,678.86, paid partly in cash, and partly in the notes afterwards described in the complaint, and there still remains due to the plaintiff, upon such sale, the sum of $4,041.50, with interest from March 30, 1873.

The complaint sets out four other causes of action on four promissory notes, all dated February 11, 1874, made by defendant to plaintiff's order, with interest at 12 per cent.: the first for $1,000, payable July 1, 1874; the second for $1,000, payable July 15, 1874; the third for $976.75, payable August 1, 1874, and the fourth for $1,042, payable August 15, 1874; and it is alleged that no part of any of these notes has been paid. Judgment is demanded for $8,064.35, with interest, etc.

In its answer the defendant alleges that the logs described in the complaint were sold to it upon the representation of plaintiff, known by him to be false, that the logs were lying on a certain creek, below a certain dam, and that plaintiff had, in the autumn before, repaired said dam and another dam on said creek, below the first, and that both dams were in good repair, and so constructed as to afford water enough to drive all the logs out of the creek and into Snake river. The defendant further alleges that in fact, and as plaintiff well knew, the said creek is so small that logs cannot ordinarily be driven therein, nor is it available for logging purposes without the aid of dams at the two

points mentioned, and it is only with great difficulty that logs can be floated or driven at all in the creek above the first-mentioned dam ; that, in fact, at the time of the sale, as plaintiff well knew, a large part of the logs were above the first dam, and the plaintiff had not repaired the dams, which were not, in fact, in good repair, and were not so constructed as to afford water enough to drive any of the logs out of the creek into the river ; that defendant, at the time of the sale, was ignorant of the situation of the logs, and bought them relying on plaintiff's representations as to their situation and the dams, and mainly induced thereby to make the purchase.

The defendant further sets forth the increased cost and expense to which it was put in driving the logs, owing to their situation and the condition of the dams, and the damage thus suffered, amounting to $3,700, is alleged as a counterclaim.

The last defence pleaded is as follows : "For a fourth defence, the defendant alleges that the plaintiff cut said logs upon certain lands belonging to the state of Minnesota, under a certain permit issued to him by the land commissioner of said state, by the terms of which permit, at the time when this defendant so purchased said logs, there was due to the state from said plaintiff, as stumpage thereon, the sum of $4,890.21 ; and that, in and by the said contract between the plaintiff and defendant for the purchase of said logs, and as a part thereof, this defendant agreed to pay said stumpage to the state of Minnesota, as will more fully appear from the bill of sale then and there executed by the said plaintiff to this defendant, which is in words and figures following, to wit:

"*St. Paul, April 19, 1873.*

" Pine City Lumber Co. bought of W. A. Merriam 1,616,602 feet of pine logs, marked K ‡ IX, landed on section 7, town 39, range 25, in Kanabec county, at

$7.25 per 1,000 feet, payable $1,000 in cash, the stumpage to be settled with the state auditor, and the balance, one-half August 1, 1873, and the other half October 1, 1873.

[Signed]                                 W. A. MERRIAM.

" And the defendant alleges that the said plaintiff has not paid said stumpage to the state of Minnesota, nor any part thereof; that, in and by said contract, it is legally holden therefor, and the state looks to the defendant for such payment, and it will be compelled to pay the same to the state, as in and by said contract it has assumed and agreed to do. Wherefore it prays that said sum of $4,890.21, so due by this defendant to the state for said stumpage, may be deducted from any sum the plaintiff may establish herein against it, and that the same be allowed herein as a credit to this defendant as of the date of said bill of sale."

The plaintiff, in his reply, puts in issue the counterclaims of the answer, and alleges that he has never been released from his obligation to the state for the stumpage mentioned in the bill of sale.

At the trial in the district court for Hennepin county, before *Vanderburgh*, J., the defendant introduced evidence tending to prove the making of the representations alleged in the answer, their falsity, the defendant's reliance upon them in making the purchase, and the damages alleged. The evidence for the defendant showing that the situation of the logs and condition of the dams was discovered in the spring of 1873, (or nearly a year before the making of the notes in suit,) one Ludden, the defendant's president, was called as a witness and testified that the notes were given at the repeated solicitation of plaintiff, and after long-continued objection by defendant, and as accommodation to plaintiff for use in his business; that defendant's mills had been burned, rendering it necessary for defendant to ask its creditors for an extension, and defendant thought it ought to give plaintiff any accommodation of that nature it could, whereupon the following question was put to him by

defendant's counsel: "State whether or not you did take into account the stumpage due to the state, or that you were owing the stumpage to the state, in giving those notes to plaintiff." On plaintiff's objection, the question was excluded as incompetent, and defendant excepted. The witness then testified that, when he gave the notes, he was not aware that the defendant was liable to the state for the stumpage, but supposed that was a matter between defendant and plaintiff. The plaintiff, in rebuttal, having introduced evidence tending to show a waiver by defendant of any claim for damages, and that the notes in suit represented the entire purchase price of the logs, (except the stumpage due thereon,) and interest to the date of the notes, the defendant recalled its president as a witness, who was asked how the amounts of the two last notes were arrived at—the purpose of the question being to ascertain whether, in such amounts, any interest was included. The question was objected to as immaterial, and was excluded, the defendant excepting. The same witness subsequently testified that no interest was included in the notes, to his knowledge.

The first instruction requested by defendant was that the jury must determine, upon the evidence, the amount of stumpage due the state, and deduct the amount thus ascertained from the balance of the purchase-money remaining unpaid, and in no event can the plaintiff recover more than the difference ; which was refused, and defendant excepted.

The third was : " If the jury shall find, from the evidence, that the plaintiff made the representations in question, and that said representations were untrue, then, whether the plaintiff knew the representations to be false, or made such representations without knowing whether they were false or true, is wholly immaterial. [Provided they were made as of his own knowledge, or unqualifiedly, and if the representations of the one party were such as might mislead the others, and did in fact mislead them, in making the con-

tract.] And the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. Nor can it make any difference that the plaintiff innocently made the representations in question, for, whether made innocently or knowingly, it would equally operate as a fraud upon the defendant, [provided, they were so unqualifiedly made, or as of his own knowledge.]"

The fourth was: "If the plaintiff made the representations in question as to the location of the logs and the condition of the dams, without making known to the defendant that he did not know the truth of the facts represented, of his own knowledge, then, in the absence of proof to the contrary, the jury must believe that the plaintiff had knowledge of the actual location of the logs and condition of the dams, and knew that the representations he so made as to the same were untrue. [That is, on the assumption that they were so unqualifiedly made, and the defendant had no means of knowing the contrary. And the plaintiff would be bound by his representations, independent of the fact that it might turn out, as a matter of fact, that they were not true.]"

The third and fourth instructions were given, qualified, however, by the words in brackets; to which qualifications the defendant excepted.

The court also gave the following instructions requested by plaintiff—the first with the qualification indicated—the defendant excepting:

"2. If the jury believe that Merriam had expended moneys in building and repairing the upper dam and other dams, to make his drive the previous years, and that it was such expenditures that he referred to in his talks with Ludden and Foster, this does not support the defendant's theory, nor show any false representations, [unless his representations were other and different from what would be warranted by such expenditures.]"

" 7. It appears in evidence that the defendant agreed to pay so much of the purchase price of these logs to the state of Minnesota as was necessary to satisfy the demand of the state against this plaintiff for the stumpage of these same logs, and that defendant has failed to make this payment. The plaintiff is, therefore, entitled to recover from the defendant this amount of money reserved to pay the debt of the plaintiff for stumpage."

The jury found for the plaintiff for the full amount claimed in the complaint, being $4,018.75, and interest, on the notes, and $4,041.50, and interest, the amount due the state for stumpage. A new trial was refused, and defendant appealed.

*Geo. L. & Chas. E. Otis* and *George Bradley*, for appellant.

1. The verdict was contrary to the evidence.

2. The court erred in excluding the defendant's question as to whether the stumpage due the state was taken into account in giving the notes. If there is anything in plaintiff's claim that we had waived our damages by giving the notes, the question was proper. As that claim was made, it certainly was competent for the witness to state all the facts connected with the giving of the notes; and the basis on which the computation was made for the notes was one of the facts so to be enquired into. Whether or not the stumpage due the state was taken into account, and entered into the calculation upon which the notes were given, was a fact tending directly to throw light on the question whether Ludden intended to waive these damages.

3. The court erred in excluding the evidence offered by defendant to prove that no interest was included in either of the last two notes. The plaintiff had already made known the theory of his defence to our claim for damages, viz., that these notes represented the entire purchase-money, less the claim of the state for stumpage—a theory that could not be sustained, unless nearly $300 of interest was included in

the notes, and the defendant was clearly entitled to show, as it offered to do, that no interest was included.

4. The court erred in refusing defendant's first request. Where A agrees with B to pay money to C, the latter may, in his own name, bring an action against A on the agreement, though not a party to it; and of course the promisee cannot release the promisor from his agreement, without the consent of the third party, for whose benefit it is made, and who has a right of action upon it. But in this case no release is pretended. The defendant insists on carrying out the contract, and paying the stumpage to the state, and not to Merriam. The latter is not damaged by the delay in payment to the state, until he is himself compelled to pay. As between defendant and Merriam, after the making of this contract, the defendant became the principal debtor to the state, and Merriam a surety. The surety has no right of action against the principal until he has first paid the debt. Payment by defendant to Merriam would not release defendant from its obligation to pay the state, and it would have to pay the debt twice.

Counsel further argued the exceptions taken to the refusal of defendant's other requests, and to the instructions given.

*Lochren, McNair & Gilfillan*, for respondent.

CORNELL, J. 1. Upon a careful examination of the whole evidence, we are satisfied no such clear case is presented of an insufficiency in the evidence to support the verdict as brings this case within the rule governing this court in granting a new trial upon that ground. Upon each material fact controverted on the trial there was sufficient, in the nature and character of the testimony and evidence adduced, fairly to raise an issue proper for the consideration of the jury, and its decision thereon is final.

2. The question referred to in defendant's second point was objectionable, in that it called for the secret intention and understanding of the party in giving the notes, instead of the facts and circumstances connected with the transac-

tion. As to the ruling referred to in his third point, the error, if any, was cured by the subsequent testimony of the witness, which substantially answered the enquiry made of him by the question which was excluded under the objection. Sanborn v. Sturtevant, 17 Minn. 200.

3. It is admitted by the pleadings, and was neither controverted nor sought to be, by either party at the trial, that, at the time the agreement sued on was entered into between plaintiff and defendant, the former was indebted to the state in a certain sum for stumpage on the logs so sold by him to defendant, and that, as part of the stipulated purchase price, defendant, by the terms of the agreement, promised the plaintiff to pay the amount of his said debt to the state, within a specified time therein named; and, though such time of payment had passed, the debt had not been paid by either party, but remained due and unpaid when the action was brought. Upon these facts, it was claimed by the defendant in his answer, and insisted on at the trial, as a defence, that the plaintiff could maintain no action upon a breach of this stipulation of the defendant, until he had first paid the debt himself; because, under the rule laid down by this court in Sanders v. Clason, 13 Minn. 379, the defendant was legally holden to the state upon such his promise to the plaintiff. The refusal of the court so to charge the jury upon this branch of the case is assigned as error in this court.

The defendant's undertaking was not one of indemnity. It was an affirmative, unconditional promise to the plaintiff, upon a valid consideration, to pay, within a specified time, a definite sum of money to a third party—the state—for his benefit. Though, within the doctrine of the New York cases upon this subject, as well as our own, the state might have maintained an action against defendant upon a breach of its agreement, it is well settled, both upon principle and authority, that the defendant also remained liable to plaintiff, upon its promise, by privity of contract; and a cause of

·action accrued in favor of the latter, which became complete immediately upon its breach by the failure of the defendant to make the payment at the stipulated time. It is not necessary for the promisee in such a case to discharge the ·debt before asserting his right of action against the promisor, growing out of the breach of his own agreement. The measure of damages in a case of this kind is the amount of the debt agreed to be paid. The ruling of the court below, therefore, upon this subject was correct. *Port* v. *Jackson*, 17 John. 239; s. c., *Jackson* v. *Port*, 17 John. 479; *Matter of Negus*, 7 Wend. 499; *Thomas* v. *Allen*, 1 Hill, 145; *Churchill* v. *Hunt*, 3 Denio, 321; *Wicker* v. *Hoppock*, 6 Wall. 94.

The point is made in this court—and for the first time in the case, as appears from the record before us—that plaintiff ·cannot sustain a recovery for the breach of defendant's stipulation, in this action, because of the insufficiency of the averments in the complaint. Conceding that the defect ·complained of was° of a material character, and not cured by the admissions in the answer—which may be well doubted, under the decisions of this court in the cases of *Estes* v. *Farnham*, 11 Minn. 423, and *Rollins* v. *St. Paul Lumber Co.*, 21 Minn. 5—clearly, to take advantage of it here as good ground of error, defendant should have pointed it out, and obtained a ruling upon it, in the district court. In view of the admissions in the answer, it was properly a matter where, in the exercise of a sound discretion, an amendment of the complaint might have been allowed, remedying the defect complained of. Instead of this, however, the trial was conducted, without objection, upon the theory that the matters in controversy between the parties were properly put in issue by the pleadings, and no suggestion was made of any departure in pleading, or of any variance between the contract set up in the complaint and that proved upon the trial. Having tried the case upon this theory, defendant will not be permitted to take a

different one here, when it is apparent it might have been successfully met by the opposite party, had his attention been called to it in the district court.

4. No point is made in this court but that the law upon the subject of false and fraudulent representations, as applicable to the evidence, was correctly given by the court in its general charge to the jury, and, in our opinion, it fully covered the case. In the light of this charge, the jury could not have been misled, by the modification of defendant's third request, to believe that false representations, positively made with intent to deceive, would not, when relied and acted upon, constitute good ground of action, even though not made upon personal knowledge. The purport of the language made use of by the court, in explaining and giving to the jury the defendant's fourth request, was that the proposition therein contained was correct as confined to representations positively or unqualifiedly made, and that defendant had the right to rely upon them, unless he had the means of knowledge to the contrary then in his possession, or at hand and available. As thus understood, it was not objectionable.

The second request of plaintiff, as modified by the court involved no legal error, and there was some evidence in the case in view of which it was properly given.

If plaintiff's alleged misrepresentations in regard to the situation of the logs and the condition of the dams were positively and fraudulently made, under circumstances inducing a belief in their truth by defendant, then plaintiff was responsible for any injury occasioned thereby, whether such statements were understood as made upon information derived from others, or from his personal knowledge; otherwise, however, if they were not so made, but were made under circumstances indicating only the expression of a belief on the part of the plaintiff, founded upon information alone, and with no intention to deceive nor to vouch for the correctness of such belief. The character of the

·statements, and the circumstances under which they were made, were matters for the consideration and determination of the jury. The fair purport and meaning of plaintiff's fourth request, as modified by the court, were not, considered in connection with the whole charge, at variance with these views, and did not, in our opinion, mislead the jury. No error is presented by any of the exceptions taken, for which a new trial should be granted.

Order affirmed.