Argued December 15, 1896; decided March 16, 1897; rehearing denied.

30  355
|a36  496

## HAAS v. DUDLEY.
### (48 Pac. 168.)

1. ASSUMPTION OF DEBT BY PURCHASER OF MORTGAGED PREMISES—
   NATURE OF CONTRACT.—An agreement by a purchaser of mort·
   gaged premises to assume and pay the incumbrance, and to save
   the grantor harmless therefrom, is not a contract of indemnity
   only, but is an absolute undertaking to pay the mortgage debt
   when due, and if that is not done, there is an immediate right of
   action, whether the grantor has paid the debt or not.

2. MEASURE OF DAMAGES FOR BREACH OF COVENANT TO PAY A MORT-
   GAGE.—Where part of a mortgaged tract is conveyed to grantees
   who covenant to pay the debt and save the mortgagor harmless
   therefrom, but the entire premises are afterward sold under the
   mortgage foreclosure, the measure of recovery on the broken
   covenant is what the reserved part of the tract was worth at the
   time of the foreclosure.

From Multnomah: HARTWELL HURLEY, Judge.

Some time prior to September 29, 1892, the plaintiff
Jacob Haas purchased of one Shaw certain real property
situate in Mt. Tabor Garden Addition, in Multnomah
County, Oregon, upon which there was a mortgage to
secure the payment of $5,812, and, as part of the purchase
price, assumed and agreed to pay $5,712 of the sum so
secured. On the date named, plaintiff sold to the defend-
ants W. L. Dudley, T. C. Powell, T. A. Jordan, and W.
A. Cardwell a portion of such real property, consisting of
163 lots, and conveyed the same by deed to the defendant
Powell, as trustee for the use and benefit of all the defend-
ants, leaving of such property 175 lots unsold. The deed
contains a warranty against all incumbrances except the
mortgage above referred to, and a stipulation to the effect
that the grantee assumes the payment of $5,712 thereof.
At the same time, and as part of the same transaction, the
defendants entered into an undertaking with plaintiff,
whereby it was stipulated, among other things, that,

"Whereas, said Jacob Haas is so selling and conveying to said T. C. Powell, for our benefit only, 163 lots of said property by him purchased from said Edson L. Shaw, and retains 175 lots of said property, as shown by said deed from Shaw; and, whereas, we are to assume and pay and save said Haas harmless from all of said mortgage, and, in the event of his selling or disposing of any said remaining lots, to discharge said mortgage as to such lots; now, therefore,   *   *   *   we further, and for the same consideration herein above expressed, jointly and severally promise and agree to and with said Jacob Haas, his heirs, grantees, and assigns, that we will at any time when Jacob Haas, his heirs, grantors, or assigns, shall sell or desire to sell or dispose of any of the remaining lots or blocks, or the whole thereof, in said 'Mt. Tabor Garden' still owned by him at the date of this instrument, fully pay, satisfy, and discharge said mortgage, so far as it may be a lien upon said lot or lots he may desire to sell or release, so that he can, in so far as said mortgage is a lien thereon, sell and convey the same free from incumbrances.   And we agree to assume and pay off said mortgage in so far as said Haas, his heirs, grantees, and assigns are concerned or in any way liable, and save him and them wholly harmless therefrom, and satisfy, release, and discharge the same in so far as it forms any lien upon the remaining lots in said tract yet owned by said Haas, or by him conveyed to said T. C. Powell."   Thereafter plaintiff sold some of the remaining lots, which the defendants failed to have released from the lien of the mortgage as agreed, and later on the mortgage was foreclosed, the property covered by it sold, and the demand thereby satisfied, leaving no surplus. The court instructed the jury at the trial that the measure of plaintiff's recovery was the value, at the time of the foreclosure sale, of the 175 lots so reserved by him.   The plaintiff asked for the following instruction, which was

refused: "I instruct you that the measure of damages in this case is the amount fixed by the contract signed by the defendants and introduced in evidence by plaintiff, and agreed then to be paid, with the interest thereon, less any amounts which you may find that the defendants, or either of them, have paid thereon since the date of the said contract, if you find that any payments have been made." There were objections to the introduction of testimony which saved to the plaintiff the same questions raised upon the instruction given and the one asked and refused. The verdict was in favor of plaintiff for $1,407, and judgment accordingly, from which he prosecutes this appeal.

AFFIRMED.

For appellant there was a brief over the name of *Starr, Thomas & Chamberlain,* with an oral argument by *Mr. Frank A. E. Starr.*

For respondents there was a brief over the name of *Stott, Boise & Stout,* with an oral argument by *Mr. Raleigh Stott.*

MR. JUSTICE WOLVERTON, after stating the case in the foregoing language, delivered the opinion of the court.

1. Two questions are presented: First, What is the nature of the defendants' obligation upon which plaintiff seeks to recover? Is it an absolute obligation to pay plaintiff's liability, or is it merely an undertaking of indemnity? And, second, What is the measure of plaintiff's relief? An undertaking to pay the debt for which another is obligated or has assumed to pay may be sued upon by the obligee and recovery had to the limit of the undertaking, or in so far as the same remains undischarged, as soon as default has been suffered; and this regardless of

whether the obligee has paid the debt or not: *Hodgson v. Bell*, 7 T. R. 93; *Penny v. Foy*, 8 Barn. & C. 11; *Loosemore v. Radford*, 9 Mees. & W. 657; *Lethbridge v. Mytton*, 2 Barn. & Adol. 772; *Robinson v. Robinson*, 24 L. T. 112; *Ham v. Hill*, 29 Mo. 275; *In re Negus*, 7 Wend. 498; *Port v. Jackson*, 17 John. 238; *Merriam v. Pine City Lumber Co.*, 23 Minn. 322; *Lathrop v. Atwood*, 21 Conn. 116; *Hume v. Hendrickson*, 79 N. Y. 127; *Hall v. Nash*, 10 Mich. 303; *Redfield v. Haight*, 27 Conn. 31; *Furnas v. Durgin*, 119 Mass. 500 (20 Am. Rep. 341). It was early objected that, if the obligee was permitted to recover before he had discharged the debt due the principal creditor, the obligor might be required to pay the same debt twice. Such was the objection made in *Loosemore v. Radford*, 9 Mees. & W. 657, upon the following state of facts: Two persons being jointly indebted upon a promissory note, one as principal and the other as surety, the principal covenanted with the surety to pay the amount of the note to the payees on a given day, but made default, and was sued upon his covenant. In determining the liability, Baron PARKE says: "This is an absolute and positive covenant by the defendant to pay a sum of money on a day certain. The money was not paid on that day, nor has it been paid since. Under these circumstances, I think the jury was warranted in giving the plaintiff the full amount of money due upon the covenant. If any money had been paid in respect of the note since the day fixed for the payment, that would relieve the plaintiff pro tanto from his responsibility. The defendant may, perhaps, have an equity that the money he may pay to the plaintiff shall be applied in discharge of his debt; but at law the plaintiff is entitled to be placed in the same situation under this agreement, as if he had paid the money to the payees of the bill." In *Robinson v. Robinson*, 24 Law T. 112, by an indenture of dissolution of a partnership, the defendant, who acquired

the partnership property, covenanted to pay and satisfy within eighteen months all the debts of the partnership, and to indemnify and save plaintiff harmless from all costs, losses, claims, and demands, which he might incur or become liable for in respect of the partnership debts. In an action against defendant upon this covenant, Lord CAMPBELL held that the measure of damages was the whole amount of the debts which he had not paid, whether they had been paid by the plaintiff or he had given promissory notes for them or not.

In *Ham* v. *Hill,* 29 Mo. 275, under a similar state of facts, where the covenant was "to assume all partnership liabilities of said firm incurred between April 1, 1858, and July 1, 1858, and to pay the same whenever payment is demanded legally by the creditors of said firm," EWING, J., speaking for the court, said: "As to the measure of the damages in this case, if the plaintiff is entitled to recover, we see no reason why he should not recover the sum due by the bond. Of course, if the bond has been paid in part, or otherwise satisfied, the defendant will be entitled to the benefit of such payment or satisfaction. The presumption is that the plaintiff gave full consideration for the bond, and, if it is not discharged, the defendant should pay the amount of it." In *Furnas* v. *Durgin,* 119 Mass. 500 (20 Am. Rep. 341), there was an exchange of lands, and the defendant accepted of plaintiff a deed to Hyde Park Estate, containing this clause: "Subject to mortgages amounting to $6,500, which the grantee hereby assumes and agrees to pay." Among these mortgages was one for $1,500, for the non-payment of which plaintiff brought an action to recover the amount thereof. DEVENS, J., says: "There is an embarrassment, undoubtedly, where the agreement is to pay a debt due from the promisor as well as the promisee. * * * As the Hyde Park estate, now the property of the defendant, is charged

with the payment of the mortgage debt, if the plaintiff should not devote the sum recovered by him to its payment, the defendant might hereafter, in order to relieve his property, be compelled to pay the amount a second time. There is no mode, at law, by which this difficulty can be avoided, and the plaintiff enabled to receive the benefit of his contract." And the measure of damages was considered to be the amount of the debt and interest, notwithstanding the grantor had not paid it. These cases are sufficient to illustrate the rule announced, and to show how firmly it has become established. But, if the obligation is merely to save another harmless from the payment of such a debt, then recovery can only be had to the extent of the damaged actually sustained. This further principle finds illustration in many of the cases above cited, and further comment thereon is unnecessary.

Whether the defendants' obligation is an absolute promise to pay, or merely an undertaking to indemnify and save harmless, depends upon the construction of the instrument by which they are bound. In *Locke* v. *Homer*, 131 Mass. 93 (41 Am. Rep. 199), it was held that the acceptance by the grantee of a deed poll containing a covenant that the land conveyed is free from incumbrances except a certain mortgage "which the grantee assumes and agrees to hold the grantor harmless from," constituted a contract by the grantee not merely to indemnify the grantor, but to pay the mortgage debt, and that the measure of damages in an action upon this contract was the unpaid amount of the debt, although no part of it had been paid by the plaintiff, the grantor. In *Gage* v. *Lewis*, 68 Ill. 617, the condition of the bond was "that if the said Carhart should pay all of said debts, claims, and demands due or to become due by the said firms of Carhart, Lewis & Co., and Carhart, Lewis & Tappan, to any and all persons whatsoever, * * * and save, indemnify, and keep

harmless the said Charles A. Lewis therefrom," construing which the court said: "It has ever been held that where a bond is given, intended as a bond to indemnify, but containing a covenant that the obligor will pay certain debts, for the payment of which the obligee is liable, and the obligor fails to perform, an action lies for the breach, and the obligee is entitled to recover the sums agreed to be paid, although it is not shown that he has been damnified, unless, from the whole instrument, it manifestly appears that its sole object was a covenant of indemnity." In *Stout* v. *Folger*, 34 Iowa, 71 (11 Am. Rep. 138), the language of the covenant was, "The said John M. Folger hereby agrees to assume in my place and stead, and save me harmless from, all indebtedness contracted by me." This was held to be an agreement by Folger not merely to indemnify Stout, his grantor, but also to assume Stout's debt, which was equivalent to an absolute undertaking to pay it; and that Stout was therefore entitled to recover the whole amount of the debt.

As covering the doctrines hereinbefore announced, as well as the construction of the instrument sued on, the following language of CHURCH, C. J., in *Lathrop* v. *Atwood*, 21 Conn. 116, is direct and pertinent. He says: "We think an examination of the cases will show these reasonable doctrines; that if a condition, covenant, or promise be only to indemnify and save harmless a party from some consequence, no action can be sustained for the liability or exposure to loss, nor until actual damage, capable of appreciation and estimate, has been sustained by the plaintiff. But if the covenant or promise be to perform some act for the plaintiff's benefit, as well as to indemnify and save him harmless from the consequence of non-performance, the neglect to perform the act, being a breach of the contract, will give immediate right of action." See also *Dye* v. *Mann*, 10 Mich. 291; *Reed* v.

*Paul*, 131 Mass. 129. Measured by these authorities, we think the undertaking sued on here is an absolute promise to pay the $5,712, with accrued interest thereon, when the same became due by virtue of the terms of the original mortgage. The words of the undertaking are: "We agree to assume and pay off said mortgage in so far as said Haas, his heirs, and assigns are concerned, or in any way liable, and save him and them wholly harmless therefrom." Here is an absolute undertaking to pay in so far as Haas had made himself liable, viz.: to the extent of $5,712 of said mortgage, coupled with an indemnity agreement to save him harmless; and when the indebtedness became due under the mortgage, and defendants failed to pay, plaintiff's right of action was then ripe, and the measure of his relief was the full amount of the indebtedness assumed, whether he had paid it or not.

2. But the mortgage has since been foreclosed, and the demand has been wholly satisfied out of the proceeds of the lots retained by plaintiff and those conveyed to the defendant Powell as trustee so that plaintiff has been entirely relieved of the liability assumed by him under his contract with Shaw, but the proceeding and process which the defendants suffered to be enforced, whereby that result was brought about, absorbed the lots retained by him, which, if defendants had observed the conditions of their undertaking, would have enured to him unencumbered with such indebtedness. Now, notwithstanding the foreclosure proceedings, and the consequent discharge and exoneration of plaintiff from his liability, he contends that he is still entitled to recover from the defendants the full amount of the indebtedness assumed by them, and that such indebtedness is the measure of his relief in the present action. Under the rule invoked in support of this contention, it must be and is admitted by the instruction asked for, that if defendants paid anything upon the

demand they ought to have credit for it, and that the measure of relief would be the amount of the balance remaining unpaid; and it must also be admitted that the defendants' property contributed to the payment of the demand, so that the rule, if applied, would constitute the balance unpaid, after the application of defendant's property to the demand, as the measure of damages. But we do not think it at all applicable under the circumstances and conditions surrounding this case. The simple fact is, plaintiff's liability has been discharged, and he has lost his lots in the transaction. If he is not chargeable with any duty which, if discharged, would have prevented the loss of the lots, he should recover their value; otherwise he would probably be without remedy.

There is a rule which requires a party entitled to the benefit of a contract to protect himself from loss arising from a breach, if it can be done at trifling expense, or with reasonable exertion, and restricts him to such damages only as with reasonable endeavor and expense he could not prevent: *Miller* v. *Mariner's Church*, 7 Me. 51 (20 Am. Dec. 341). It has been held, however, that the rule is not applicable to a contract of the nature we are considering, where there was in effect an absolute promise to pay, and not cne of indemnity merely: *Wicker* v. *Hoppock*, 73 U. S. (6 Wall.) 94. Plaintiff, of course, was aware of the foreclosure sale, and he could, if he had seen fit, perhaps have secured the sale of defendants' lots first; and if they did not sell for enough to satisfy the mortgage, he could have paid the balance, and this balance, under the rule above discussed, would have been the measure of his damages. The defendants, however, became the principal debtors, as between them and the plaintiff, when they assumed the payment of the $5,712 upon the mortgage, and the plaintiff remained simply as surety for them. The lots conveyed to the defendants

were primarily liable for the payment of the amount assumed, and the lots retained by plaintiff for a deficiency only. Under these circumstances it was not incumbent upon the plaintiff, nor was it a duty enjoined upon him, to raise money sufficient to discharge the obligation, as between him and the defendants, nor was he under any obligations to take any steps in the foreclosure proceedings. It was by the default of the defendants that he was deprived of his property, and the value thereof is the rightful measure of his demand against them: *Wilcox* v. *Campbell,* 106 N. Y. 325 (12 N. E. 823). That case comes near the case at bar, and is well reasoned. Any other rule of damages under a like state of facts would not be at all times adequate to the injury. It follows that there was no error in the court below, and the judgment is affirmed.

AFFIRMED.

---

Argued December 16, 1896; decided March 16, 1897; rehearing denied.