BOLLINGER v. BAYLOR. (No. 5661.)

(Court of Civil Appeals of Texas. San Antonio. May 3, 1916.)

1. VENDOR AND PURCHASER ☞265(3)—VENDOR'S LIEN—ASSUMPTION—LIABILITY.

The first grantee of land, who conveyed to a second party, who in turn conveyed to a third, both assuming the vendor's lien note as part of the purchase price, had a cause of action against the third grantee, whose failure to pay the note occasioned the loss to the first grantee of the part of the land covered by the vendor's lien note, but not sold by him.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 709; Dec. Dig. ☞265 (3).]

2. VENDOR AND PURCHASER ☞265(3)—VENDOR'S LIEN — ASSUMPTION OF NOTE — DEFAULT—DAMAGES.

In an action by the first grantee of land against the grantee of the party to whom he conveyed, both grantees assuming the vendor's

lien note as part of the purchase price, for damages sustained by the third grantee's failure to pay the note, the measure of damages was the value of that part of the land which the first grantee had not sold, but which was covered by the lien and so lost to him.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 709; Dec. Dig. ⊕═265 (3).]

Appeal from District Court, Uvalde County; R. H. Burney, Judge.

Suit by A. S. Baylor against D. B. Bollinger and another. From a judgment for plaintiff, the named defendant appeals. Judgment affirmed.

Love & Ellis, of Uvalde, for appellant. L. Old, of Uvalde, for appellee.

SWEARINGEN, J. This is a suit brought in the district court of Uvalde county, Tex., by the appellee, A. S. Baylor, against T. A. Wilson and D. B. Bollinger, defendants, D. B. Bollinger being the appellant here, and the plaintiff in his first amended original petition asked a judgment against both defendants, Wilson and Bollinger, jointly and severally for damages, based on the proposition that, according to his allegations, on the 24th day of July, 1907, he owned certain lands situated in Uvalde county, Tex., fully described in said petition, and that on that day he executed a note for $5,000, payable to one Elizabeth Ellis, who is in no wise a party to this suit, and to secure the payment thereof he executed a deed of trust on his land, among which was included a part of the Pedro Ximenes survey No. 92, which deed of trust was duly executed; that thereafter, while the said note was still unpaid, the said A. S. Baylor sold a part of the said land so covered by the deed of trust to one T. A. Wilson, and as a part of the consideration for said deed, and as a part of the purchase money, the said T. A. Wilson assumed the payment of the said note, and accepted the deed, conveying the said land to him. Two hundred ninety-seven acres of the land covered by the debt was not conveyed to the said T. A. Wilson; that thereafter, while the said note was still unpaid and the said lien a valid lien, T. A. Wilson sold the same to D. B. Bollinger, and executed to him a deed, in which, among other considerations, the said D. B. Bollinger assumed the payment of this same note, and accepted and placed on record, as had Wilson already done, the deed, containing the recitation that he did assume the payment of said note, and in the said deed the said 297 acres of land was not conveyed; that thereafter both defendants, D. B. Bollinger and T. A. Wilson, defaulted in the payment of said note, which was secured by a deed of trust on all of the land, including the 297 acres, and then A. M. Crisp, the trustee in the deed of trust, sold the land for the benefit of the payee in the said note, Elizabeth Ellis, which sale was in accordance with law; and that in said sale all of the land which was conveyed in the deed of trust was sold, the said 297 acres as well as the other.

Plaintiff brought suit and alleged the value of the 297 acres of land to be $20 per acre, and prayed for judgment for the value of the land, the 297 acres which was lost to him by reason of the failure on the part of the defendants to pay the note, as they had agreed to do, and a trial was had before the district court of Uvalde county, Tex., without the intervention of the jury, and a judgment rendered in favor of the plaintiff, A. S. Baylor, for the sum of $1,400 jointly and severally against T. A. Wilson and D. B. Bollinger, from which judgment T. A. Wilson did not appeal, but the appellant, D. B. Bollinger, appealed.

The court found the following conclusions of fact admitted to be correct by both appellant and appellee, viz.:

"Findings of Fact.

"(1) I find that on the 24th day of July, 1907, for the purpose of securing a note for $5,000, payable to Elizabeth Ellis at Uvalde, Tex., five years after date, with interest at the rate of 7 per cent. per annum, the plaintiff herein, A. S. Baylor, executed and delivered to A. M. Crisp, trustee for the said Elizabeth Ellis, a deed of trust on the following described lands, lying and being situated in Uvalde county, Tex., then owned and held by said A. S. Baylor, to wit: Survey No. 192, H. M. Lewis, assignee of Pedro Ximeniz, 640 acres; survey No. 783, J. B. Wadleigh, assignee of Texas Central Railway Company, 640 acres; survey No. 663, L. Polk, assignee of Gulf, Colorado & Santa Fé Railway Company, 640 acres; survey No. 661, L. Polk, assignee of Gulf, Colorado & Santa Fé Railway Company, 640 acres—save and except out of said tract of land 200 acres out of survey 192, which was reserved by the plaintiff as a homestead, and 3 acres which he had theretofore sold to Belle Faires. Also in said deed of trust was included the equity of the plaintiff in the following surveys of land: Survey No. 724, certificate 1622, Gulf, Colorado & Santa Fé Railway Company, 640 acres; survey No. 664, certificate No. 1751, Gulf, Colorado & Santa Fé Railway Company, 640 acres; section No. 782, certificate No. 1277, Texas Central Railway Company, 640 acres; south one-half of section No. 784, Texas Central Railway Company, certificate 1620, 640 acres; also was conveyed lease on survey 781, Texas Central Railway Company, 640 acres, which said deed of trust is duly recorded in the deed of trust records of Uvalde county, Tex., on page 122, Volume 8.

"(2) I find that on the 25th day of May, 1910, this plaintiff sold to the defendant T. A. Wilson and executed to him a warranty deed conveying the following described tracts and parcels of land, to wit: West ¼ of survey No. 192; south ¾ of survey No. 783; all of said survey No. 663; all of said survey No. 661; all of said survey No. 664—all of which land was covered by the said deed of trust, and, in addition to same, conveyed at same time and in said deed 640 acres of land known as survey No. 897, script No. 171, J. C. Gibson, original grantee, which was not included in said deed of trust.

"(3) I find that, as a part of the consideration for the execution of the said deed by the plaintiff, A. S. Baylor, to the said defendant T. A. Wilson, and as a part of the consideration for the price of said land so sold and conveyed by the plaintiff to the defendant, it was mutually agreed and understood that the said defendant T. A. Wilson should assume and pay off in full the said $5,000 note, principal and interest.

"(4) I find that the deed so executed by the said plaintiff, A. S. Baylor, to the said defendant, and accepted by him, recited that the said assumption of the payment of the said note was a part of the consideration of the said deed, and I further find that the said T. A. Wilson received said deed, and placed the same on record in the deed records of Uvalde county, Tex., and went into possession of said land.

"(5) I find that on the 25th day of March, 1914, the said defendant T. A. Wilson sold to the defendant D. B. Bollinger, the land conveyed to him, T. A. Wilson, by the plaintiff, which is fully described in the answer of the said defendant, T. A. Wilson.

"(6) I find that a part of the consideration for the execution of the said deed from the defendant T. A. Wilson to the defendant D. B. Bollinger was the assumption of the payment by him, the said defendant D. B. Bollinger, of the above-described $5,000 note.

"(7) I find that T. A. Wilson executed a deed to the said D. B. Bollinger conveying the said land to the said defendant Bollinger, and that the said deed recited that a part of the consideration was the assumption of the said note, and I further find that the said D. B. Bollinger received the said deed and placed the same on record in Uvalde county, Tex., and went into possession of same.

"(8) I find that the said defendant T. A. Wilson paid $500 on the principal of the said note, and paid the interest until June 23, 1913, and I further find that he failed to pay the balance of the note when due.

"(9) I further find that D. B. Bollinger did not pay anything on said note when due.

"(10) I further find that on the 7th day of November, 1914, that there was due and payable on said note, principal and interest, the sum of $5,081.62, plus 10 per cent. attorney fees, a total of $5,589.78, and I further find that on said date A. M. Crisp, the trustee in said deed of trust, advertised the said land for sale in accordance with law.

"(11) I further find that a sale of all of the land included in the said deed of trust was made on the 1st day of December, 1914, and that at said sale V. E. Scearce became the purchaser, bidding therefor the full amount due on the said note, and that said sale was made for the satisfaction of the balance due on said note, to wit, $5,589.78 principal, interest and attorney fees.

"(12) I further find that after the sale, on the 9th day of December, 1914, the said A. M. Crisp, as such trustee, for Elizabeth Ellis executed and delivered to V. E. Scearce a trustee's deed for all of the land covered in said deed of trust, except survey No. 724, certificate 1622, Gulf, Colorado & Santa Fé Railway Company, 640 acres, which is not involved in this suit, and I find that the said V. E. Scearce received the said deed and placed the same on record.

"(13) I find that of the said land conveyed in said deed of trust there were 440 acres out of survey No. 192, Pedro Ximeniz.

"(14) I find that out of said survey No. 192, Pedro Ximeniz, the plaintiff in this case would have had left, out of the lands conveyed in the said deed of trust, free from incumbrances, 297.7 acres of land which were not included in the deeds to Wilson and Bollinger, but was embraced in the said deed of trust, and was sold and conveyed by said Crisp, trustee, to said V. E. Scearce, described as follows, to wit: 'Beginning at a stake on the south line of said Sur. No. 192, at the S. W. cor. of the A. S. Baylor homestead tract; thence along the west line of said tract as follows, to wit: N. 13° 30′ W. 195 vrs., N. 38° 45′ W. 294 vrs. to stake from which a L. O. 12″ in dia. brs. N. 4° W. 6 vrs., do stump 9″ in dia. brs. N. 40° W. 11 vrs., N. 18° E. 256 vrs. to a stake from which a L. O. 9″ in dia. brs. N. 75 W. 20¾ vrs., do. 24″ in dia. brs. S. 27° W. 44 vrs., N. 57° 30′ E. 10 vrs., N. 2°

E. 460 vrs. to a stake on the north line of sur. No. 192; thence S. 70° W. with the N. line of said Sur. No. 192, 1991.4 vrs. to a stake on same, the N. E. cor. of the west one-quarter of Sur. No. 192; thence S. 20° E. 977 vrs. to a stake on the south line of Sur. No. 192 to S. E. cor. of the west one-quarter of said Sur. No. 192; thence N. 70° E. with the south line of Sur. No. 192, 1,378.4 vrs., to the place of beginning.'

"(15) That had the said defendants or either of them paid the said note that the said 297 acres of land would have been left to this plaintiff free from incumbrances; and I further find that by reason of their failure to pay the said note, as called for and stipulated in said deed, that the said 297 acres was lost to the plaintiff, and was conveyed in said trustee's deed to the said V. E. Scearce.

"(16) I further find that at the time of the sale of the said lands under the said deed of trust, to wit, on the 1st day of December, 1914, the said 297 acres of land was of the market value of $1,400.

"(17) I find that the market value on December 1, 1914, of the 2,560-acre tract sold by A. S. Baylor to A. T. Wilson, and by Wilson to D. B. Bollinger, was $7,680."

[1] Appellant contends in his first and second assignments that appellant, by purchasing land from Wilson, who purchased it from Baylor, who first purchased from the lienholder, was under no equitable or contractual obligation to Baylor by reason of Bollinger's failure to pay a vendor's lien note executed originally by Baylor in favor of Ellis, though the mortgagor and each succeeding grantee had expressly promised to assume the said vendor's lien note as part of the purchase price of the land, possession of which each successive purchaser acquired. The reason assigned by appellant is that there was no privity between the first grantee, Baylor, and the third grantee, Bollinger.

"There are two theories of law upon which a mortgagee may base his right to hold a purchaser who has assumed the payment of his mortgage personally liable for the mortgage debt: First, the theory of equitable subrogation, by which a creditor is entitled to all the collateral securities which his debtor has obtained to re-enforce the primary obligation; and, second, the theory that, if one person makes a promise to another for the benefit of a third person, that third person may maintain an action on the promise." Wiltsie on Mortgage Foreclosures, p. 276, § 226; Closner v. Chapin, 168 S. W. 371, and authorities therein cited.

The case of Ayers v. Dixon, 78 N. Y. 318, is cited with approval by Judge Gaines in the case of Gunst v. Pelham, 74 Tex. 586, 12 S. W. 233.

In the Ayers Case, supra, it was held substantially that, if the mortgagor paid the amount assumed by the subsequent grantee, he would be entitled to subrogation to the rights of the mortgagee, or in case of a foreclosure could require the mortgage to be paid out of that portion of the premises conveyed to the subsequent grantee, and for the amount paid voluntarily or on compulsion could obtain satisfaction by suit against the subsequent grantee.

In the case at bar appellee, Baylor, paid by compulsion a part of the debt secured by lien on the land purchased by appellant,

which lien and debt appellant had expressly assumed and defaulted. The trial court properly held that appellee had a cause of action against appellant under the facts as found by the court.

[2] Appellant's third assignment is as follows:

"The court erred in holding that the plaintiff's measure of damages, if any be sustained, is the market value of the 297.7 acres of land lost by plaintiff."

In the case of Gregory v. Green, 133 S. W. 481, it is held that the mortgagor's right to maintain an action against the subsequent grantee did not accrue until the trustee's sale which deprived appellee herein, the mortgagor, of the property retained by him.

In Wilcox v. Campbell, 106 N. Y. 325, 12 N. E. 823, it is said:

"If by the default of the defendant [appellant here] he [appellee here] was deprived of his land, the value of the land is the fair measure of his claim against the defendant [appellant]."

In the case of Haas v. Dudley, 30 Or. 355, 48 Pac. 168, this same rule of the measure of damages under a similar state of facts as the case at bar was announced in the following language:

"It was by the default of the defendants that he was deprived of his property, and the value thereof is the rightful measure of his demand against them." 3 Sedgwick on Damages (9th Ed.) p. 2011, note 201.

The measure of damages used by the trial court was correct. The third assignment is overruled.

There being no error in the judgment of the trial court, the judgment is in all things affirmed.