MERCHANTS INSURANCE CO. OF NEW JERSEY v. MILLARD STORY ET AL.

No. 1028.

1. **Fire Insurance—Mortgaged Property—Transfer of Property—Subrogation.**

A transfer of insured property, mortgaged by deed of trust, made to one who assumes the mortgage, with the consent of the insurer, the trustee, and the beneficiary, converts the original mortgagors from principals to sureties, as between all the parties, and entitles them to all the rights of sureties; and the purchaser of the property becomes the "mortgagor," within the meaning of that term as used in the subrogation clause of the insurance policy, providing that the trustee's interest in the insurance should not be invalidated by any act or neglect of the mortgagor, and that when the insurer should pay to the trustee any sum for loss on the policy, he should be subrogated therefor to all the rights of the parties to whom such payment should be made.

2. **Same—Surety—Forfeiture.**

The mortgage company "and its assigns" being entitled to the benefit of the insurance under the subrogation clause of the policy, the surety is entitled to the same benefit, unless the contract expressly excludes him therefrom; and after loss under the policy, may pay to the trustee the amount of the mortgage debt and become the assignee of the mortgage company, notwithstanding a forfeiture of the policy by parties who had become primarily liable.

3. **Same—Right of Surety—Payment of Premium as Consideration.**

Such right of the surety cannot be defeated by the prior purchase of the mortgage by the insurance company; and the premium paid by the original mortgagor, who, as surety, claims the benefit of the insurance, the contract of insurance being a burden on the property, will be considered a full equivalent for the risk assumed.

4. **Same—Forfeiture—Construction.**

The forfeiture of a fire insurance policy will not be permitted, unless clearly provided for, and then only to the extent that the contract may expressly require.

5. **Same—Surety Protected Against Forfeiture.**

The surety, having parted with the property, and having no means of knowing or preventing a violation of the policy, stands in the same position as the beneficiary, under the subrogation clause; and the violation of the policy, if he be not at fault, does not invalidate it as to him.

APPEAL from Dallas. Tried below before Hon. EDWARD GRAY.

*Leake, Henry & Reeves*, for appellant.—1. The court erred in not rendering judgment against all of the defendants and in favor of the plaintiff, for the full amount sued for, and in overruling plaintiff's motion for a new trial. Allen v. Watertown, 132 Mass., 480; Foster v. Van Reed (70 N. Y., 19), '26 Am. Repts., 544; 24 Am. and Eng. Ency. of Law, note beginning on page 318; Ulster Co. Savings Institute v. Leake (73 N. Y., 161), 29 Am. Repts., 115.

2. The court erred in its conclusion of law, that a violation of the policy invalidated it as to the parties at fault, but not as to the parties not at fault, or who could not have foreseen or prevented such violation of the policy, and that the sureties who had parted with the property, and who had no means of knowing or preventing a violation of the policy, stand in principle in the same position as the mortgage company itself.

*Dickson & Moroney*, for appellees.—In support of the propositions embodied in the conclusions of law of the court below, we submit the following: (1) Insurance Co. v. Hanford, 143 U. S., 187.

(2) Brandt on Suretyship, secs. 248, 335.

(3) Goddard v. Insurance Co., 76 Texas, 69; Insurance Co. v. Gordon, 68 Texas, 144; Mut. Res., etc., Co. v. Payne, 32 S. W. Rep., 1063, 1066.

(4) Mut. Res., etc., Co. v. Payne, 32 S. W. Rep., 1063, to the effect that general language in one part of a policy may be restricted by particular language in another part, and that all parts should be construed together.

NEILL, Associate Justice.—The statement of the nature and result of the suit, which is accepted as correct by appellees, is taken from the appellant's brief, and is, as follows:

"The Merchants Insurance Company of Newark, New Jersey, was plaintiff in the District Court. The following named persons were the defendants: Owen D. Burnette, J. B. Oldham, Calvin McCormick, R. B. Godley, Millard Story, George W. Moore, W. J. Logan, E. M. Logan and J. T. Dargan.

"The cause of action alleged in plaintiff's petition was substantially as follows: That the defendants, Burnette and Oldham, for value made their note, payable to the order of the Security Mortgage and Trust Co., of Dallas, Texas, on the 1st of July, 1894, for $3000, with nine per cent. per annum interest from date, payable semi-annually on the 1st of January and July, the coupons bearing interest after maturity at the rate of 12 per cent. per annum, and providing for an attorney's fee of 10 per cent on principal and interest, if not paid at maturity, and if placed in the hands of an attorney for collection; that the note provided that the failure to pay for five days any installment of interest would cause the whole debt to mature, at the election of any holder of said debt; that for the purpose of securing said debt, said Burnette and Old-

ham, joined by their wives, executed to J. T. Dargan a deed of trust on a parcel of land (fully described) lying in the city of Dallas, providing for the sale of said land, and the appropriation of the proceeds of the sale to the payment of said debt and expenses, if said debt should not be paid at maturity; that default was made for more than the time stipulated in the payment of an installment of interest upon said note; that subsequently to the execution of said note, the Security Mortgage and Trust Co., by its endorsement upon the back of said note, and upon each of its unpaid interest coupons, transferred said note and coupons to plaintiff; that subsequently said Burnette and Oldham sold and conveyed said land to Calvin McCormick, who in the deed made to him assumed the payment of said note, principal and interest; that subsequently the said McCormick and the other defendants, in the order above named, under him, except defendant J. T. Dargan, sold and conveyed said land from one to the other, each purchaser, except E. M. Logan, assuming in the deed made to him the payment of said note, principal and interest, that said note and interest have become due, and remain unpaid, etc.; that said Moore is a non-resident of Texas, etc.

"The prayer was for judgment for the debt and costs, and foreclosure of the mortgage lien on said property. The suit was dismissed as to Moore, and no relief was sought against Dargan. The defendants filed separate pleadings.

"The defendants, Burnette and Oldham, answered specially, in substance, that when the trust deed was executed, there was situated on the mortgaged property a dwelling house; that the trust deed provided that the mortgagors should have said house insured for the benefit of the owner of said debt; that said Burnette and Oldham did have said house insured for $2800; that when they sold said property to McCormick, they transferred said insurance to him, and that when McCormick transferred said property to Godley and Story, he also transferred to them the said insurance, and when Godley sold the property to Story, he transferred said insurance to him also; that the said Story surrendered to the insurance company said policy for another policy directly to himself, paying plaintiff for said policy $39.45; that by said policy plaintiff insured said Story on said buildings against loss by fire for $2800, from October 11, 1890, until July 12, 1892; that by the terms of said policy the loss was payable to J. T. Dargan, trustee for the Security Mortgage and Trust Co., of Dallas, Texas, and its assigns; that when said Story sold and conveyed said property to said Moore, he also transferred to him said insurance; that in each of said sales of said property the vendees assumed the payment of said debt; that plaintiff and the Security Mortgage and Trust Co. had notice of and consented to such assumption of the payment of said debt, whereby all other defendants occupy the relation of principal debtors, and these defendants, Burnette and Oldham, are merely sureties; that on the 25th of August, 1891, said insured property was entirely destroyed by fire, without negligence on the part of these defendants; that plaintiff was

duly notified of said loss by the Security Mortgage and Trust Co.; that afterwards plaintiff paid to said Security Mortgage and Trust Co., which was then the holder of said debt, the sum of $3269.25, in satisfaction of said policy of insurance, and for the transfer of the balance of said debt; that by reason of the premises, plaintiff became liable to said Dargan, as trustee for the benefit of the holder of said notes for said sum of $2800, the amount of said policy; that said improvements at all times largely exceeded said sum in value; that the payment made by the insurance company, plaintiff, operated to that extent as a payment of the note in controversy.

"The defendants, W. J. and E. M. Logan and Story, answered by a general demurrer and a general denial. The defendant McCormick adopted the answer of Oldham and Burnette. The other defendants were all, except Moore, duly cited, but none of them answered.

"The plaintiff, by a supplemental petition, alleged that the said policies of insurance contained, among others, provisions and conditions that they should become void and of no effect: (1) By the failure or neglect of the assured to comply with its terms, conditions and covenants: (2) By the sale or transfer, or any change whatever in title or possession, of the property by insured (except in case of succession by reason of the death of the assured), whether by legal process or judicial decree or voluntary transfer or conveyance: (3) By the assignment of said policy before a loss without the consent of the company endorsed thereon.

"That notwithstanding said provisions and conditions in said policy, the said Story, on the 11th of October, 1890, and the other defendants under him, except said Dargan and E. M. Logan (who was the last vendee) afterwards, at specified dates, successively sold and conveyed said insured premises to each other, in the order that their names appear above in the statement of the nature and result of this suit, and as alleged in the answer of Burnette and Oldham. By reason of all which, said policy of insurance, as to all of the defendants, was made null and void; that it was stipulated in said policy of insurance that the loss thereunder, if any, should be payable to J. T. Dargan, trustee, for the Security Mortgage and Trust Co., of Dallas, Texas, and its assigns; that it was stipulated therein that said insurance, as to the interest of the said trustee, should not be invalidated by any act or neglect of the mortgagor or owner of the property insured; and that whenever plaintiff should pay said trustee any sum for loss under said policy and should claim that, as to the mortgagor or owner, no liability therefor existed, it should at once and to the extent of said payment be legally subrogated to all the rights of the party to whom such payment should be made under any and all securities held by such party for the payment of said debt; or that said plaintiff might, at its option, pay the said trustee the whole debt so secured, with all the interest which might have accrued thereon to the date of such payment, and thereupon receive from the party to whom such payment should be made an assignment and

transfer of said debt with all securities held by said parties for the payment thereof; that at the time of the issuance of said policy of insurance, the Security Mortgage and Trust Co., of Dallas, owned said debt, and continued to own it until after the adjustment of said loss with the insurance company (plaintiffs herein), after which plaintiff paid to said Security Mortgage and Trust Co. $2800, that being the full amount of said policy, on account of said loss, and also paid to it the full amount of said debt, principal and interest; that thereupon the said Security Mortgage and Trust Company sold and delivered to the plaintiff said note and the interest coupons thereto attached and herein sued upon, with all of its rights under said deed of trust, whereby plaintiff is now the owner of said note, coupons and deed of trust, and is fully subrogated to all of the rights that the Security Mortgage and Trust Co. ever had as the owner thereof.

"The cause was tried by the court without a jury, and a judgment was rendered in favor of the plaintiff against the defendants Story and W. J. Logan for the full amount of the debt sued for ($4636.72), and against defendants Godley, McCormick, Oldham and Burnette for $645.86, and attorneys fees and costs, with foreclosure of said mortgage lien upon said land."

*Conclusions of Fact.*—"1.   On July 24, 1889, Owen D. Burnette and J. B. Oldham executed to the Security Mortgage and Trust Company a promissory note for $3000, due July 1, 1894, with interest coupons at nine per cent, maturing semi annually, and provdiing for declaring the principal due for default in interest, said note and interest coupons being fully described in plaintiff's petition.

"2.   To secure the payment of said note, said Owen D. Burnette and wife and J. B. Oldham executed and delivered to J. T. Dargan, trustee, a deed of trust in the nature of a mortgage of even date with the note, and upon a lot of land in the city of Dallas, fully described in plaintiff's petition.   A dwelling house worth upwards of $3000 was located on this lot.   The house and lot was owned by Owen D. Burnette and J. B. Oldham at the time.   The deed of trust contained a covenant for full insurance of the building for the benefit of the mortgage.

"3.   In compliance with the covenant for insurance, said Owen D. Burnette and J. B. Oldham had issued to them by the Merchants' Insurance Company of Newark, a fire insurance policy, expiring July 12, 1892, for $2800 on said building, loss, if any, payable to J. T. Dargan, trustee, as his interest may appear, and paying the insurance company a premium of $39.45 therefor.   This policy, together with attached clauses, was in the same form (except as to date, parties and term) as the policy subsequently issued in lieu of the same, and hereinafter more fully described.

"4.   Subsequently, said land and improvements were conveyed by the following chain of title:   Owen D. Burnette and wife and J. B. Oldham to Calvin McCormick;  Nov. 1, 1889, Calvin McCormick to Millard

Story and R. B. Godley; Oct. 10, 1890, R. B. Godley to Millard Story (one-half interest); Oct. 11, 1890, Millard Story to George W. Moore; July 18, 1890, George W. Moore to W. J. Logan; July 25, 1891, W. J. Logan to E. M. Logan. Each purchaser except E. M. Logan, expressly assumed and agreed to pay the mortgage debt. E. M. Logan purchased without assuming the debt. The insurance policy was regularly transferred down to Millard Story by consent of all parties in interest, properly endorsed on the policy. The interest was paid to the mortgage company by the parties who under said successive assumptions were primarily liable for the same, down to and including the interest coupon maturing January 1, 1891, since which date no interest has been paid, and the principal is also unpaid.

"5. On October 11, 1890, said insurance company issued directly to Millard Story, in lieu of the unexpired portion of the original policy, a policy of fire insurance expiring July 12, 1892, the date of expiration of the original policy, issued to Owen D. Burnette and J. B. Oldham, which original policy was cancelled and surrendered. This policy of insurance, like the original policy, contained the following provisions: 'That said policy should become void, (1) by the failure or neglect of the assured to comply with its terms, conditions or covenants; (2) by the sale or transfer, or any change whatever in title or possession, of the property insured (except in case of succession by reason of the death of the assured), whether by legal process or judicial decree, or voluntary transfer or conveyance.' "

Said policy also contained the following provisions, to-wit:

"It being understood and agreed that all proceedings after a loss shall be in accordance with the terms and stipulations printed on the back of this policy, which are hereby declared to be a part of this contract, and are to be resorted to in order to determine the rights and obligations of the parties hereunto."

Among the terms and stipulations endorsed on the back of this policy were the following, to-wit:

"(1) When a fire has occurred, injuring the property herein described, the assured shall use all practicable means to save and protect the same; shall give immediate notice of the loss in writing to this company; and when personal property is damaged, shall forthwith cause it to be put in order, assorting and arranging the various articles according to their kinds, separating the damaged from the undamaged, and shall cause an inventory of the whole thereof, including property claimed to be totally destroyed, to be made and furnished to this company, naming the quantity and cost of each article, and the amount claimed on each.

"(4) As soon after the fire as possible, a particular statement of the loss shall be rendered to this company at the office in Newark, N. J., signed and sworn to by the assured, stating such knowledge or information as the assured has been able to obtain as to the origin and circumstances of the fire, and also stating the title and interest of the as-

sured, and of all others in the property, the cash value thereof, the amount of loss or damage, all other insurance, whether valid or not, covering any of said property, and a copy of the written part of all policies, and the occupation of the entire premises. The assured shall also furnish such other particulars and such certificates of a magistrate or officer charged with the duty of investigating fires, as may be required. And if loss or damage be claimed upon buildings, fixtures or machinery, the assured shall, if required, furnish duly verified plans and specifications thereof, in such detail as will enable an architect or builder to estimate the cost of replacing the property destroyed, which papers shall form a part of the particular statement or proof of loss.

"(5) If this policy is made payable, in case of loss, to a third party, or held as collateral security, the proofs of loss shall nevertheless be made by the party insured at the time of the fire; but this company shall not in such case, or under any circumstances whatever, be liable for a greater proportion of any loss upon property described in this policy than the sum hereby insured bears to the whole sum insured thereon, whether such other insurance be by specific, or by general, or by floating policies, or whether such other insurance be valid or not, and without reference to the solvency of such other insurance companies. And it is hereby declared and agreed that in case of the assured holding any other policy in this or any other company on the property insured, subject to the condition of average, this policy shall be subject to average in like manner. The claim shall not be due or payable until sixty days after the full completion of all the requirements herein contained.

"(8) It is furthermore hereby expressly provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or chancery, until an award shall be obtained, as herein provided, fixing the amount of the claim, nor unless such suit or action shall be commenced within twelve months next after the fire shall occur."

The said policy of insurance had attached to it, as part thereof, the following clause, to-wit:

"Subrogation Clause. To be attached only to policies covering in whole or in part on real property. Loss, if any, payable to J. T. Dargan, trustee, for the Security Mortgage and Trust Company, of Dallas, Texas, and its assigns, as hereinafter provided.

"It is hereby understood and agreed that this insurance, as to the interest of the trustee only therein, shall not be invalidated by any act or neglect of the mortgagor, or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by the terms of this policy. Provided, that in case the mortgagor or owner neglects or refuses to pay any premium due under this policy, then, on demand, the trustee shall pay the same. Provided also, that the trustee shall notify this company of any change of ownership or increase of hazard which shall come to his or their knowledge,

and shall have permission for such change of ownership or increase of hazard duly endorsed on this policy. And provided further, that every increase of hazard not permitted by the policy to the mortgagor or owner shall be paid for by the trustee on reasonable demand, and after demand made by this company upon and refusal by the mortgagor or owner to pay, according to the established schedule of rates. It is, however, understood that this company reserves the right to cancel this policy as stipulated in the printed conditions in said policy, and also to cancel this agreement, on giving ten days' notice of their intention to the trustee named therein, and from and after the expiration of ten days this agreement shall be null and void. It is further agreed that in case of any other insurance upon the property hereby insured, then this company shall not be liable under this policy for a greater portion of any loss sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an interest therein.

"It is also agreed, that whenever this company shall pay the trustee any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor exists, it shall at once and to the extent of such payment, be legally subrogated to all the rights of the party to whom such payment shall be made, under any and all securities held by such party for the payment of said debt. But such subrogation shall be in subordination to the claim of said party for the balance of the debt secured. Or said company may, at its option, pay the said trustee the whole debt so secured, with all the interest which may have accrued thereon to the date of such payment, and shall thereupon receive from the party to whom such payment shall be made, an assignment and transfer of said debt, with all securities held by said parties for the payment thereof.

"To attach to policy No. 645746 of the Merchants Insurance Company, Dallas, Texas, agency. J. S. Grose, agent."

"6. On October 30, 1890, this last policy of insurance was duly transferred in writing by Millard Story to Geo. W. Moore, with the consent of the insurance company properly endorsed thereon.

"When property was transferred by Geo. W. Moore to W. J. Logan, and by W. J. Logan to E. M. Logan, the policy was not transferred, and the insurance company had no notice of these two last transfers of title to the land, and did not consent to the same.

"7. The building on said lot was totally destroyed by fire on August 25, 1891, J. T. Dargan, trustee, and the Security Mortgage and Trust Company, the holder of the note as well as of the insurance policy, notified the insurance company of the loss, and on December 19, 1891, the insurance company paid to the trustee and the mortgage company $2800, in full settlement of the claim for loss, and the policy was duly receipted by the trustee and mortgage company, and surrendered to the insurance company. The insurance company also paid $469.25 in addition, the total being the amount owing on the note to that date,

with interest, and thereupon the note was endorsed and delivered to the insurance company. No notice or proof of loss was given except as stated.

"8. Geo. W. Moore, though made a defendant in plaintiff's petition, is a non-resident of the State, and not being served with citation, was at the trial dismissed from the case without objection.

"9. The note and unpaid interest coupons were placed by plaintiff in the hands of attorneys for collection, after the endorsement to plaintiff, and it is admitted that, as to such parties, if any, as the $2800 is a proper credit in favor of, attorneys fees are chargeable only on the balance.

"10. The mortgage company had the policies of insurance in its possession down to the time of the fire and knew of each transfer of the property down to and including the transfer to Moore, and knew that by each of said transfers the grantee assumed the payment of the mortgage debt."

*Conclusions of Law.*—"1. The transfer of the property by the original mortgagors to a vendee who assumed payment of the mortgage debt, with the consent in writing of the insurance company, trustee and the mortgage company, taken in connection with the subsequent receipt by the mortgage company of interest payments from the vendee, and the recognition in this suit, of these transactions by the insurance company in suing the vendee on his contract of assumption, operates to convert the original mortgagors from principals to sureties, not only as between them and their vendee, but also as between them and the trustee, insurance company and mortgage company, and such original mortgagors thereby became entitled to all the rights of sureties. The effect of the transaction was to create a new contract, by which the purchaser who, with the consent of the other parties in interest, assumed the mortgage debt, became the mortgagor within the meaning of the term as used in the subrogation clause in the policy. The same principle applies to all the subsequent transfers that were made by consent of the trustee, mortgage company, and insurance company. Insurance Co. v. Hanford, 143 U. S., 187.

"2. It being admitted that, under the terms of the subrogation clause in the insurance policy, the mortgage company "and its assigns" were entitled to the benefit of the insurance, it follows, on the principles of equity, independent of express contract, that the sureties are also entitled to the same benefit, unless the contract expressly excluded them from such benefit. The sureties had a right in self-protection, independent of contract, to pay the mortgage company the amount of the mortgage debt, and thereby become "its assigns." They would thereby come within the letter as well as the spirit of the subrogation clause, and be protected by the policy, notwithstanding the forfeiture by the parties who had become primarily liable. This right of the sureties the court will recognize and protect in this suit, and it cannot be defeated merely by the prior pur-

chase of the mortgage by the insurance company.  Brandt, Surety (2 ed.) secs. 301, 302; Goddard v. Insurance Co., 67 Texas, 69; Insurance Co. v. Goddard, 68 Texas, 144.

"3.  In construing the contract and determining the relative priorities as between the sureties for the debt and the insurance company, it is a material consideration that, while the liability of the sureties is clearly secondary, the liability of the insurance company is clearly primary, except to the extent that the contract of insurance expressly shows it to be otherwise, the premium received by the insurance company being considered a full equivalent for the risk assumed by it, and the original mortgagors who now claim the benefit of the insurance, having paid the premium, and the contract for insurance being a burden on the property which passed with it.

"4.  In construing the contract, the principle also applies that the purpose of insurance is indemnity, and a forfeiture will not be permitted unless clearly provided for, and then only to the extent that the contract may expressly require it.

"5.  Read in the light of the foregoing principles, the proper construction of the subrogation clause is that a violation of the policy will invalidate it as to the parties at fault, but not as to the parties not at fault, or who could not have foreseen or prevented such violation of the policy.  In this regard, the sureties, who had parted with the property, and had no means of knowing or preventing a violation of the policy, stand in principle in the same position as the mortgage company itself.  Judgment will be rendered adjusting the equities accordingly.  There is no controversy about any other questions of law in this case, and it therefore becomes unnecessary to present any further conclusions of law."

These conclusions of fact and law were found by the Honorable Edward Gray, the district judge who tried the cause, and are fully approved and concurred in by this court

The judgment is affirmed.

*Affirmed.*

Delivered April 28, 1896.