## S. W. DARKE *v.* THE BOARD OF COUNTY COMMISSIONERS OF SALT LAKE COUNTY.

### COUNTY INDEBTEDNESS—BONDS.

1. The indebtedness of Salt Lake county for the year 1895, which exceeded the debt limit of that year by $89,563.32, and which was validated by the act of 1896 (Sess. Laws, pp. 179, 524), became, by the authority of the legislature, an indebtedness of 1895, the year when the consideration was received; and the promise, although illegal at the time, was made, and was therefore indebtedness, prior to January, 1896; and the county board were authorized by section 14, p. 524, Sess. Laws 1896, and sections 1, 2, Sess. Laws 1897, to issue bonds for its payment.

2. The balance of the $120,000 indebtedness before statehood, viz. $30,432, which was paid in part by the revenue of 1896, may be regarded as indebtedness of 1895, for which bonds may be issued, and the county revenue of 1896 may be reimbursed by the payment of the amount misapplied from the funds of that year in payment of the indebtedness of 1895.

(No. 829. Decided May 31, 1897.)

Suit by S. W. Darke against the Board of County Commissioners, Salt Lake county, for a writ of prohibition. *Denied.*

*D. C. Eichnor,* for plaintiff.

*Waldemar Van Cott, Graham F. Putnam* and *Ray Van Cott,* for defendants.

ZANE, C. J.:

The plaintiff presents his affidavit and petition to the court, in which he alleges that he is a resident and taxpayer of Salt Lake county, Utah; that the board of county commissioners of said county are about to issue county bonds to the amount of $120,000, with the intention of selling them and of applying their proceeds to the payment of indebtedness to that amount; that the indebtedness accrued prior to the 4th day of January, 1896; that the supreme court of the late territory of Utah held $89,568.32 of the $120,000 invalid because it exceeded the debt limit of the county as fixed by statute of the territory; that an act of the legislature of the state of Utah in force June 5, 1896, validated the same. Plaintiff insists that the sum of $89,568.32 must be regarded as indebtedness of 1896, and that the board has no authority to bond it. The plaintiff also alleges that $30,432, the residue of the $120,000, was valid indebtedness of the county, and evidenced by war-

rants outstanding on January 4, 1896, when Utah became a state, but that a considerable part of it was actually paid from the revenue of 1896, and that the board has no power to bond it for that reason. The defendant interposes a demurrer to the affidavit and petition on the ground that the facts stated do not show a cause of action. But the parties agree that all the essential facts are correctly stated in the affidavits, and submit the case for final decision and judgment on them. We are called upon to decide whether the plaintiff is entitled to a final writ,—whether the county board shall be prohibited from issuing bonds to the amount of the $120,000, or to any part of that amount.

1. As to whether the $89,568.32 should be regarded as 1895 or 1896 indebtedness: This indebtedness was invalid because it exceeded the debt limit fixed by an act of the territorial legislature. Therefore that legislature had the power to raise the limit and authorize the indebtedness, but the state legislature of 1896 ratified such action of the board in creating it without authority, validated the indebtedness, and authorized the issuance of bonds to provide money with which to pay it. Sess. Laws Utah 1896, pp. 179, 524. The consideration for the indebtedness was received by the county in 1895, though the promise to pay at that time was invalid, and remained so until the act of June 5, 1896. That act validated the indebtedness, and thereby the promise. But for the consideration and the illegal promise in 1895, the law of 1896 would have been of no avail. The legislature could not, *ipso facto*, without any consideration, by its own fiat impose indebtedness upon the county. The people did not intrust such arbitrary and absolute power to the legislature to impose upon them such unjust burdens. We must regard the $89,568.32 as indebtedness of the county existing before statehood.

2. As to the $30,432, the residue of the $120,000, it is conceded that it was existing indebtedness against the county before statehood; but it is insisted that it cannot be bonded, because it has been paid in part from the revenue of the year 1896. In *Fritsch* v. *Board of Com'rs*, 15 Utah 85, in construing section 3, art. 14, of the constitution, we held that the revenue of the year should be appropriated to the payment of the indebtedness of the year,—that is to say, to indebtedness falling due during the year, so far as required; and, if a surplus should remain, it should become a part of the revenue of the next year. The county board were authorized by section 14, p. 524, Sess. Laws Utah 1896, and by sections 1, 2, Sess. Laws Utah 1897, to fund any outstanding indebtedness on the 4th day of January, 1896, and to issue bonds therefor. The board had no right to appropriate the revenue required for the payment of the indebtedness of 1896 to the indebtedness of 1895 or previous years. In so far as the revenue of 1896 was paid upon indebtedness of 1895, it appears that the revenue of the year first named was insufficient to pay the indebtedness of that year. The purpose of the defendants is, as it appears, to raise money by a sale of bonds, which it is authorized to issue and sell for the payment of indebtedness that existed before statehood, and to reimburse the revenue of 1896, and thereby enable the county to pay the persons holding valid indebtedness of 1896, which remains unpaid in consequence of the wrongful payment of the revenue of that year on the indebtedness existing before statehood, on indebtedness of 1895. The county could not be prejudiced in a pecuniary point of view by payment of valid indebtedness existing before statehood from the revenue of 1896, and by the payment of an equal amount of the indebtedness of 1896 from

money that ought to have been applied to the payment of indebtedness before statehood, but was not. It can cost the county no more to pay both classes of indebtedness in that way. However, we do not wish to approve of such a misappropriation of the funds of 1896; but the wrong having been done to the creditor of the latter year, from a mistaken view of the law, the present board should be permitted to remedy it in the way they propose,—by paying the county funds that should have been paid on the indebtedness before statehood to the creditors of 1896, who should have received the misapplied funds. The $120,000 appears to be a valid indebtedness existing before statehood. The board may lawfully issue bonds to that amount. If any part of it shall hereafter be found to be fraudulent, that cannot invalidate the bonds purchased in good faith before. It would simply require the board to refuse to pay such fraudulent indebtedness, and appropriate so much of the proceeds of the bonds to the payment of legitimate indebteduess of the county. The writ of prohibition is denied. Judgment will be entered for the defendant, and for costs.

BARTCH, J., concurs in the result. HILES, District Judge, concurs.