Argued 2 March, decided 30 April, rehearing denied 23 July, 1907.

HOFFMAN *r.* HABIGHORST.

89 Pac. 952, 91 Pac. 20.

PRINCIPAL AND SURETY—EFFECT OF NOTICE TO AGENT OF SURETYSHIP.

1. Notice of the facts constituting suretyship reaching one who is an agent of the principal as to this transaction is notice to the principal.

SAME—CASE UNDER CONSIDERATION.

2. Where several parties sign a note as makers, but under an understanding with the officers of a company in which they are all interested, that the note is really to be used as collateral to secure a loan to such company, this being known to the agent through whom the money was borrowed and paid to the company, such parties are sureties as to the principal who loaned the money, she being bound by the knowledge of

her agent, though the note was really made directly to her and the real beneficiary never executed any instrument to which the note in question could be collateral.

CONTRACTS—CREATION OF RELATION OF CREDITOR AND DEBTOR.

3. To create the relation of creditor and principal debtor it is not necessary that the promise to pay shall be made directly to the creditor by the debtor, but it will suffice if the promise is made to the surety by the debtor, for a valuable and executed consideration, and thereafter the creditor, with knowldege of that fact, deals directly with the real debtor in relation to the debt, ignoring the surety.

PRINCIPAL AND SURETY—DISCHARGE OF SURETY BY EXTENDING TIME FOR PAYMENT OF NOTE.*

4. Where a payee of a note grants an extension of time for payment thereof to a principal debtor, without the consent of its sureties, the sureties are discharged from liability, not only to the payee, but to those who take by assignment from him after maturity.

PRINCIPAL AND SURETY—DISCHARGE BY ACT OF CREDITOR—KNOWLEDGE OF SURETYSHIP.

5. To render conduct of a creditor available as a discharge of the sureties of a debtor, it must appear that when the acts relied upon occurred the creditor knew of the suretyship. It is not necessary that the creditor had this knowledge when the debt was incurred, it will be sufficient if he had acquired it before the occurrence complained of.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Statement by MR. COMMISSIONER SLATER.

This is an action by Julia E. Hoffman, as executrix, on a promissory note made by E. H. Habighorst and 14 others, of date February 29, 1892, for the principal sum of $15,000, payable one year after date, with interest at 8 per cent per annum, to the order of Mrs. Sarah Wertheimer, who, on or about August 29, 1895, sold and transferred it to the plaintiff. It is claimed by the defendants that the note in suit was given without any valuable consideration coming to them, but was made at the request of the Portland Guarantee Company, a corporation, to be used by it as collateral security in borrowing that amount of money from Mrs. Wertheimer, and that she, with knowledge of that relationship and without their consent, by a valid agreement, extended the time of payment to the Guarantee Company, and thereby released them; that at the same time, as a considera-

---

*NOTE.—The acts on which this decision is based occurred before the Negotiable Instruments Act of 1899 was enacted, while the decision in *Cellers* v. *Meachem,* ante, p. 186, deals with occurrences since that act was passed.          REPORTER.

tion for the contract extending the time, she received from said company security for the payment of said debt, which she afterwards surrendered and released without defendants' consent; and that thereby they were also released. This is the second appeal of this case. On the first appeal a judgment in plaintiff's favor was reversed for error in sustaining a demurrer to the answer. The case is reported in 38 Or. 261 (63 Pac. 610: 53 L. R. A. 908), to which reference may be made for the allegations of the complaint and answer. After the cause was remanded the plaintiff replied, denying all of the allegations of the answer. A trial was had, and at the close of the taking of testimony all of the defendants moved the court for a directed verdict in their favor, which being denied, all of them, excepting Habighorst, made a similar motion, which was also denied. Thereupon plaintiff moved for a directed verdict in her favor for the amount of the note, and the same was allowed and judgment thereon was afterwards awarded, from which the defendants again appeal, assigning as error the overruling of their motions for a directed verdict as well as the allowance of plaintiff's motion. Numerous other assignments of error on rejection and admission of testimony are made.   REVERSED.

For appellants there was a brief over the names of *William David Fenton* and *E. S. J. McAllister,* with an oral argument by *Mr. Fenton.*

For respondent there was a brief over the names of *Guy G. Willis* and *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Rufus Mallory.*

Opinion by MR. COMMISSIONER SLATER.

Upon the first appeal of this case it was determined that the facts stated in each of the three separate defenses constituted a good defense to the action, which, with the necessary legal inferences therefrom, under the principle of *stare decisis,* are now binding on this court. It was there held that it may be shown by parol that a promissory note was in fact made to secure the debt and liability of another, and thus all the makers be entitled

to the rights of a surety as to the payee of such note having knowledge of the facts. If such a note is enforced against the makers, they would clearly be entitled to be indemnified by the principal debtor; and this is given as one of the tests of suretyship. The form of the obligation would not prevent the introduction of such evidence.

The principal question now to be determined is whether there was any competent testimony offered tending to support any of the alleged defenses, so that it was incumbent upon the court at least to submit the cause to the jury, and also whether, from the admitted facts and uncontradicted testimony material to the issues, the court was bound to direct a verdict for the defendants or for a part of them. The following facts were either admitted or proven by competent testimony:

The Portland University was incorporated in 1891 under the laws of Oregon for the purpose of establishing and maintaining an institution of learning, which, for brevity, will be hereafter referred to as the "University." This corporation was without funds and credit. To provide it with both, another corporation was formed and known as the Portland Guarantee Company, which, for the same reason, will be referred to as the "Company." The purpose and object of its formation was to aid the University and to act as its financial agent. The plan adopted for getting money for the University was to issue bonds and have their payment guaranteed by the Company. Bonds to the amount of $250,000 were issued and guaranteed. With these bonds a large amount of land in the suburbs of Portland was purchased by and conveyed to the University, which was also conveyed by it to the Company. This land was laid out into lots and blocks and platted as "University Park." The object and purpose of this transaction was to have the Company act as the financial agent of the University with full power to dispose of and convey the lands to purchasers, and from such sales, not only pay off the bonds as they fell due, but acquire funds necessary to commence the construction of necessary college buildings and maintain the school. Many lots were sold, a building was erected,

and a school started.  It is not claimed by either party to this action, as we understand counsel, that the Company had any other object or business than thus to serve the University.

In February, 1892, the University was in need of money, and the Company undertook to procure it.  With this object in view, it applied to Ben Selling, who was the financial agent of Mrs. Sarah Wertheimer, for a loan of $15,000.  Selling had that amount of his principal's money in hand which he desired to loan, but refused to lend it to the Company, giving as a reason that he did not consider it financially responsible.  At this time Dr. C. C. Stratton was president of the board of directors of the University and was a director in the Company.  P. L. Willis was secretary of both corporations.  Messrs. Akin, Meyers, Willis, Crawford and one other were directors of the Company.  Akin was also a partner in business with Selling, who was also a stockholder in the University and was conversant with its needs and plans as well as the object and purpose of the Company. Stratton, Willis and Akin discussed among themselves and with Selling the ways and means of securing the needed money, and concluded that individuals interested in the success of the University might be induced to sign a note to assist the Company in procuring the money, and in formulating this plan each of these parties had talked with Selling.  With this object in view, Stratton went to each of these defendants and stated in substance that he was acting for the Company; that it needed $15,000 to supply the wants of the University, and could obtain it if he could procure the signatures of 15 good responsible people to the note which he exhibited to each of them; that the Company was amply responsible to the amount of the note, and would pay the note out of the proceeds of the property conveyed to it by the University, which it was then selling by lots; and that, in case there should be a failure thus to pay the note, the Company would set aside about 88 lots out of which sales would be made to pay the note.  The Company was to sell the lots, but how the said 88 lots were to be set aside for security was not agreed upon when Stratton procured the signatures of the defendants and

their co-makers to the note. There was no statement made to them by Stratton, and none of them understood, that they were lending that amount of money to the Company, nor did they understand that the Company was to execute its note in their favor for a like amount and upon the same terms as the note signed by them. The note in question was doubtless made in the office of Selling, where all the business was transacted as between him, Stratton, Willis and Akin, and was then given to Stratton to get the signatures. Each of the defendants signed the note upon the above understanding, and upon the further understanding that none of them was to look after its payment, which was to be done by the Company.

Stratton, after obtaining the signatures, delivered the note to Willis, as secretary of the Company, which, on February 29, 1892, the date of the note, ordered a note of like amount and upon the same terms executed in its name and in favor of the defendants and their co-makers, and to secure the payment of the same it also ordered that a deed of general warranty be executed in its name, conveying to E. H. Habighorst certain lots in University Park, both of said instruments to be left in escrow with P. L. Willis, to be by him delivered to said Habighorst upon the latter's request, for the protection and benefit of the makers of the note. In pursuance of such order, a note and deed of the character described were executed, but were never delivered to Habighorst. Nor did any of the defendants know of the execution of the note until after this action was brought. Nor did any of them, except Habighorst, know of the execution of the deed; and he learned of its existence only after the making of the contract extending the time of payment of the note in suit. Willis, after receiving from Stratton the note in suit, took it to Selling and received from him the money. Selling never had any dealings with any of the defendants or their comakers in the matter of making said loan.

The interest, which fell due quarterly, was paid by the Company to Selling at the latter's office, Willis always attending to that matter. The records of the Company show that a warrant

was ordered drawn on its treasury to pay each quarter's interest as it fell due on the note of the Company to Habighorst and others, and Willis swears he paid the money direct to Selling for the defendants and their co-makers on the Wertheimer note at the request of Habighorst. The latter, however, denies that he ever so requested, but there is no competent evidence in the record that Habighorst had any authority from his co-makers to act for them in this or in any other matter connected with this transaction. When the note came due, no demand for payment was made by Selling or any of the makers, nor did any of them, except Habighorst, know before this action was begun that it had not in fact been paid by the Company. In August, 1893, the Company, learning from Selling that he was becoming uneasy on account of the nonpayment of the note, and because of the financial crisis then impending, and knowing that, if Mrs. Wertheimer sued the defendants and their co-makers, they, in turn, would be forced to sue the Company, which would precipitate a general crisis in its affairs and prove disastrous to its whole financial scheme, thereupon negotiated with Selling for an extension of time for the payment of the note in action, which resulted in the execution of the written contract between them, which is set out in full in the answer and may be found in 38 Or. 261, 263 (63 Pac. 610: 53 L. R. A. 908). All this was done without the consent of any of the defendants or their co-makers, and without the knowledge of any of them, except Habighorst who knew of the contemplated agreement but protested against it. The terms of the agreement were carried out by each of the parties to it and became fully executed. On August 29, 1895, the note was assigned and transferred to plaintiff by Mrs. Wertheimer as alleged; but on September 24, 1895, without the knowledge or consent of any of the defendants, Selling surrendered up to Willis at the latter's request the deed of the Company to Mrs. Wertheimer mentioned in said contract, and conveying all of blocks 49, 51, 53 and 67, in University Park Addition, which deed had been intended by the parties to operate as a mortgage, and had never been recorded. Before

this action was commenced all the property held by the Company was seized and taken by legal proceedings instituted by its other creditors.

From these facts plaintiff contends that the essence of the transaction is a loan by Mrs. Wertheimer to defendants and their co-makers, who thereupon loaned the money to the Company and received its note payable one year after date with security; that the relation of principal and surety between the Company and defendants did not exist, especially as to Mrs. Wertheimer, who had declined to loan to the Company, because there was no privity of contract between her and the Company; and that the extension agreement plead as a defense was not made by her with the principal debtor, but with a stranger to the original transaction, and that its execution could have no effect on the rights of these defendants. The defendants, however, contend that the Company borrowed the money from Mrs. Wertheimer, and that their note was given to be used by the Company as collateral security for such loan with the knowledge of such fact in Mrs. Wertheimer, and that thereby they were sureties only.

1. It is not necessary to do more at this time than to state the rule heretofore announced by this court, that whenever an agent acting in the scope of his authority receives notice or has knowledge of a state of facts in a matter in which he represents the principal, and which he is in duty bound to communicate to his principal, it binds the principal: *Wood* v. *Rayburn,* 18 Or. 3 (22 Pac. 521); *Rayburn* v. *Davisson,* 22 Or. 242 (29 Pac. 738); *Farmers' Bank* v. *Saling,* 33 Or. 394 (54 Pac. 190).

2. Within this rule, whatever knowledge or notice Selling may have had as to any contractual relations existing between the Company and the defendants which would affect their contractual relation to his principal, at the time the loan was made or at the time the contract for the extension was made, and which may have affected her rights against said parties, is notice to Mrs. Wertheimer, and she will be bound thereby. As between

the Company and the makers of the note in suit, regardless of
who was the original debtor or borrower, the uncontradicted evi-
dence clearly establishes the relationship to one another of prin-
cipal on the part of the Company, on the one hand, and surety
on the part of the defendants and their co-makers, on the other
hand, in respect to the debt owing to Mrs. Wertheimer evidenced
by this note. The makers of the note received no part of the
money borrowed from Mrs. Wertheimer on the credit of the
note but it all went to the Company to be used for the Uni-
versity, and of this fact Selling well knew. They received no
consideration whatever for signing the note, except the promise
of Dr. Stratton, as agent for the Company, that it would pay
the note out of the proceeds from the sales of lots; that is, they
signed the note and thereby bound themselves to the payee in
consideration of the promise of the Company that it would as
to them be principal debtor and discharge the debt at its ma-
turity without the payee having to resort to them. They were
entitled then in law, whenever the obligation was enforced
against them, to be indemnified by the Company, who ought to
have made payment before the makers were compelled to do so.
The consideration received by the Company for its promise to
them is the $15,000 received on the credit of the note and thus
far the contract is an executed one. To this state of facts the
case of *Smith* v. *Shelden,* 35 Mich. 42 (24 Am. Rep. 529), is
peculiarly applicable. Mr. Chief Justice COOLEY in rendering
the opinion says: "Now, a surety, as we understand it, is a
person who, being liable to pay a debt or perform an obliga-
tion, is entitled, if it is enforced against him, to be indemnified
by some other person, who ought himself to have made payment
or performed before the surety was compelled to do so. It is
immaterial in what form the relation of principal and surety
is established, or whether the creditor is or is not contracted with
in the two capacities, as is often the case when notes are given
or bonds are taken. The relation is fixed by the arrangement
and equities between the debtors or obligors, and may be known
to the creditor, or wholly unknown. If it is unknown to him,

his rights are in no manner affected by it; but, if he knows that one party is surety merely, it is only just to require of him that in any subsequent action he may take regarding the debt he shall not lose sight of the surety's equities."

But we are to inquire what knowledge, if any, Mrs. Wertheimer is chargeable with respecting such relationship of principal and surety as to this debt. Besides Selling's knowledge of the purpose and object of the loan and who derived the sole benefit thereof, and the peculiar manner in which the defendants' signatures were obtained, all of which we think would be quite sufficient for that purpose, we need go no further than the recitals of the contract for extension of payment to conclusively settle that matter. It is there admitted over Mrs. Wertheimer's signature, affixed thereto by her agent, Selling, that the loan was for the benefit of the Company, and that it received the money, and its duty to pay the loan in the first instance is at least impliedly admitted. It is therein recited that "said Company desires a further extension of time," and it is therein expressly agreed that "said Wertheimer shall and will extend the time of payment of said loan so that it may be paid by said Company on or before the 29th day of August, 1894." This language necessarily presupposes knowledge of the existence of some prior legal obligation resting on the Company to pay said loan arising either out of a direct promise to that effect made to Selling or out of a collateral promise made to the makers of said note.

3. Counsel for plaintiff, however, argue with much force that to operate as a release of sureties the contract for extension of time must be made between the creditor and the principal debtor; that here there is no evidence of a direct promise made to Mrs. Wertheimer by the Company, the alleged principal debtor, either at the inception of the loan or in the extension agreement, to repay the loan, and hence there is no privity of contract between them; and hence that, as to her, the Company never was her principal debtor. But to create such relationship between the parties the law does not require a direct promise

to the creditor. It is sufficient that, if based on a valuable and executed consideration, such promise is made to the surety for the direct benefit of the creditor, and if with knowledge thereof the creditor thereafter deals with the promisor in relation to the debt. We have already determined the uncontroverted facts to be that in consideration of the defendants signing the note and the Company receiving the $15,000 obtained thereon, which it did receive, it promised the makers to become paymaster to the payee of this note. In the case of *Washburn* v. *Interstate Invest. Co.* 26 Or. 436 (38 Pac. 620), this court says: "Where one person receives a fund or property from another, and, instead of paying him therefor, is allowed to retain the consideration under an agreement to pay it to the creditors of the other party, or when it is agreed between the parties to the contract, there being a valuable consideration therefor, that the promisor may discharge his debt or liability to the promisee by paying it to some third person, to whom the promisee owes some legal duty or obligation, it would be just and proper that such third party should have the right to maintain an action on the contract in his own name. But this is on the theory that the contract, being for his direct benefit, the law invests him with a privity in respect thereto by reason of his interest, and the promisor, in performing the contract, is doing nothing more than to discharge his own debt or obligation in accordance with his agreement. In such case the amount which the promisor agrees to pay is his own debt or obligation, which, by an arrangement with the promisee, he is to pay or discharge in a particular manner; and the parties having by their contract thus treated the third party as primarily interested in its performance." So then the right in Mrs. Wertheimer to sue the Company upon this debt, in the absence of a direct promise to her, may arise from the collateral agreement between the latter and the makers of the note, and she, through her agent, having knowledge of that agreement and having thereafter treated with the Company as principal, thereby adopted the collateral agreement and made it her own. In other words, she has sought to obtain the ben-

efit thereof, and cannot now escape the results legally flowing therefrom.

The case of *M'Questen* v. *Noyes,* 6 N. H. 19, cited and quoted from with approval by Mr. Chief Justice BEAN in *Hoffman* v. *Habighorst,* 38 Or. 261 (63 Pac. 610: 53 L. R. A. 908), at page 269 of the opinion, is very much to the point here, and in *Commercial Bank* v. *Wood,* 56 Mo. App. 214, which is a case very similar, at least in principle, to the case at bar, the plaintiff made the same contention that is now made here. Mr. Justice ELLISON says: "Plaintiff seeks to avoid the force of the contract of extension of time by the assertion that the extension of time must be on a contract with the principal debtor, and that Patton, and not Schneider Meyer, is the principal debtor in this case. But we have already seen that in this state it is settled that Schneider Meyer by his assumpsit became a principal debtor to the holder of the note." In *Union Life, Ins. Co.* v. *Hanford,* 143 U. S. 187 (12 Sup. Ct. 437: 36 L. Ed. 118), Mr. Justice GRAY applied the same doctrine. There a mortgage upon realty was made to secure a loan. Subsequently the mortgagor sold and conveyed the premises by warranty deed to a third party, excepting, however, from the warrantee the said mortgage. The deed recited that the grantee expressly agreed to assume and pay the mortgage debt. This contract was brought to the knowledge of the mortgagee, who, for a valuable consideration, paid by the grantee, extended the time of payment of the mortgage debt without the consent of the mortgagor. Afterwards, on foreclosure, the mortgagee asked for a personal judgment against the original mortgagor for a deficiency after sale of the mortgaged premises. At page 190 of 143 U. S. (page 438 of 12 Sup. Ct.: 36 L. Ed. 118), Mr. Justice GRAY says that "by the law of Illinois, where the present action was brought, as by the law of New York and of some other states, the mortgagee may sue at law a grantee, who, by the terms of an absolute conveyance from the mortgagor, assumes the payment of the mortgage debt." And this is upon the principle of law announced by this court in *Washburn* v. *Interstate Invest. Co.* 26 Or. 436 (38 Pac.

620).  Mr. Justice GRAY continues: "According to that view, the grantee, as soon as the mortgagee knows of the agreement, becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable to the latter, and the relation of the grantee and the grantor towards the mortgagee, as well as between themselves, is thenceforth that of principal and surety for the payment of the mortgage debt. Where such is held to be the relation of the parties, the consequence must follow that any subsequent agreement of the mortgagee with the grantee, without the assent of the grantor, extending the time of payment of the mortgage debt, discharges the grantor from all personal liability on that debt." To the same effect are *Calvo* v. *Davies,* 73 N. Y. 211 (29 Am. Rep. 130), cited by Mr. Justice GRAY; *Pratt* v. *Conoway,* 148 Mo. 291 (49 S. W. 1028: 71 Am. St. Rep. 602); *Hall* v. *Johnston,* 6 Tex. Civ. App. 110 (24 S. W. 861); *Merchants' Ins. Co.* v. *Story,* 13 Tex. Civ. App. 124 (35 S. W. 68); *Darke* v. *Board of Com'rs,* 15 Utah, 467 (49 Pac. 257).

The settled law of this state is the same as that of Illinois and New York—that one who accepts a conveyance of lands in which it is provided that the grantee shall assume the payment of a lien on such lands makes the debt his own, as though he had originally executed it: *Haas* v. *Dudley,* 30 Or. 355 (48 Pac. 168); *Farmers' Nat. Bank* v. *Gates,* 33 Or. 388 (54 Pac. 205: 72 Am. St. Rep. 724); *Windle* v. *Hughes,* 40 Or. 1 (65 Pac. 1058). In *Haas* v. *Dudley,* 30 Or. 355 (48 Pac. 168), Mr. Justice WOLVERTON says: "The defendants, however, became the principal debtors, as between them and the plaintiff, when they assumed the payment of the $5,712 upon the mortgage, and the plaintiff remained simply as surety for them." And in *Farmers' Nat. Bank* v. *Gates,* 33 Or. 388 (72 Am. St. Rep. 724: 54 Pac. 205), Mr. Justice BEAN says: "By the terms of the conveyance from Gates he assumed and agreed to pay it as a part of the purchase price, and thus made it his own as effectually as if he had executed it himself." And hence the cases of *Union Life Ins. Co.* v. *Hanford,* 143 U. S. 187 (12 Sup. Ct. 437: 36 L. Ed.

118), and *Calvo* v. *Davies,* 73 N. Y. 211 (29 Am. Rep. 130), are applicable here. The provision of the extension agreement for payment by the Company of an increased rate of interest on the debt is of itself a sufficient consideration to support the contract (1 Brandt, Suretyship, 3 ed., § 389; *Darke* v. *Board of Comr's,* 15 Utah, 467: 49 Pac. 257), besides which there is the agreement to give and the giving of "further security" by mortgage of four blocks of land.

4. The contract, being based upon a valuable consideration, was binding between the parties, and payment could not have been enforced within the time granted by the contract for payment. It may be true, as counsel for plaintiff has argued, that the makers of the note could have paid at any period of the extended time, and Mrs. Wertheimer would have been obliged to have accepted such payment; but, if so, it would be a voluntary, and not an enforced payment on their part. And for that reason they would have no right of action for indemnity against the Company until the expiration of the extended period: *Ross* v. *Menefee,* 125 Ind. 432 (25 N. E. 545). In *Commercial Bank* v. *Wood,* 56 Mo. App. 214, Mr. Justice ELLISON says: "It was a right possessed by defendant to pay off this note at any time after it became due and thereby to become entitled to the mortgage with the right to immediately foreclose on the property described therein. She had the further right to sue Schneider Meyer on his assumption of the debt. Now, suppose she had chosen to exercise either of these rights. She would have found herself delayed, hampered and embarrassed by the contract of extension which plaintiff had made with Schneider Meyer. Defendant, by being subrogated to plaintiff's rights in the mortgage, would stand in plaintiff's shoes, and therefore have to take it incumbered by the contract of extension"—citing *Calvo* v. *Davies,* 73 N. Y. 211 (29 Am. Rep. 130). The agreement being valid, it is quite clear that it operated as a discharge of the defendant, for it is well settled that, where time is given to the principal debtor without the assent of the surety by a valid agreement which ties up the hands of the creditor, the surety is

discharged: *Walker* v. *Goldsmith,* 7 Or. 161; *Findley* v. *Hill,* 8 Or. 247 (34 Am. Rep. 578). And, being released as to Mrs. Wertheimer, they are also released as to the plaintiff who took by assignment after maturity, and therefore subject to all defenses that might be made against the payee. For these reasons the court erred in denying the defendants' motion for a directed verdict in their favor.

It will not be necessary to consider any other of the assigned errors, as this doubtless disposes of the case. The judgment should be reversed, and the cause remanded for such further proceedings as may be proper and not inconsistent with this opinion.                    REVERSED.

---

Decided 23 July, 1907.

ON MOTION FOR REHEARING.

Opinion by MR. COMMISSIONER SLATER.

A very earnest motion for a rehearing has been filed by plaintiff's counsel in this case, in which connection all the issues involved have been reargued; but, after a painstaking and careful re-examination of the whole case, we are constrained to recommend an adherence to the opinion.

5. Plaintiff's main contention is that, in order to sustain the defendants' claim of a release by an extension agreement, it is necessary that the court must first find that the Guarantee Company was the principal obligor and debtor on this note at the time of its execution, for, he argues, if it was not so bound at that time, it would be a stranger to the transaction, and the makers would not be discharged as a result of an extension agreement made by the payee with the Company. In *Manley* v. *Boycot,* 2 El. & Bl. 46, decided by the Queen's Bench in 1853, it was held that the defense was not available, unless the holder when he took the note knew of the suretyship and agreed to treat the surety as such. But in *Pooley* v. *Harradine,* 7 El. & Bl. 431, decided in 1857, and in *Greenough* v. *McClelland,* 2 El. & Bl. 424, decided in 1860 by the same court, it was held that the

defense might be made when the creditor knew of the fact of suretyship, but did not agree to hold the surety as such; and it has been generally held in this country that such sureties may, both at law and in equity, show by parol that they were sureties and were known to be such by the creditor, and they will be entitled to all the rights, privileges and immunities of sureties, and will be discharged by any act of the creditor, after he has knowledge of the fact of suretyship, which discharges any other surety. But it must appear that the creditor at the time the act complained of was done knew of the fact of suretyship. The great weight of authority and of reason is in favor of the law as above stated: 1 Brandt, Suretyship, § 38. The equity of the surety to be discharged when he is prejudiced by the act of the creditor "does not depend upon any contract with the creditor, but upon its being inequitable in him knowingly to prejudice the rights of the surety against the principal": COLERIDGE, J., in *Pooley* v. *Harradine*, 7 El. & Bl. 431; 1 Brandt, Suretyship (3 ed.), § 38. The relation of principal and surety "is a fact collateral to the contract, and no part of it": VALENTINE, J., in *Rose* v. *Williams*, 5 Kan. 483.

While the Company may be a stranger to the transaction, so far as disclosed by the paper evidence of it, yet it was not a stranger to the real transaction as disclosed by all the facts giving origin to the paper. It may be conceded, for the purpose of argument, that the defendants, in fact, as well as by the terms of the note, were the real borrowers from Mrs. Wertheimer of $15,000, and were her principal debtors at the time of the signing of the note, yet back of their contract with her, there is another contract between the defendants and the Company, to the effect that if defendants would sign the note in question, and permit the Company to obtain from Mrs. Wertheimer, for its own use and benefit, the proceeds thereof, it would become paymaster of the note, and upon which the later transaction was based. Mrs. Wertheimer, through her agent, Selling, had notice of this collateral contract at the time of the execution of the note, as well as at the time of the execution of the extension

agreement.   Doubtless she was not bound to treat the Company as her debtor, nor to have any dealing with it, in respect to the note.   She might do so or not, as it would appear to be to her advantage.   But, having knowledge of the contractual relation between the makers of the note and the Company, if she ever dealt with it as her debtor in respect to the debt which was the consideration of the note, she was bound at her peril to observe the rights of the defendants against the Company arising out of their collateral contract.   Counsel for plaintiff relies upon 2 Daniel, Neg. Inst. § 1324, who says:   "The agreement for indulgence, in order to discharge the drawer or the indorser, must be made with the maker or acceptor, who is the principal debtor; and, if it be made with a third party, it will not affect the drawer's or indorser's rights or remedies, although such third party may have his appropriate remedy for breach of the contract with him."   This text is apparently based upon the English case of *Frazier* v. *Jordan,* 8 El. & Bl. 302, cited in the footnote to said section.   There COLERIDGE rules that the doctrine of an agreement for indulgence or extension ought not to be extended in case of a contract with a stranger; that the principal debtor, having given no consideration for the promise, has no ground to complain of the breach.   But this principal cannot apply to a case where the alleged stranger has, by previous valid contract with the original principal debtor, and based upon a valuable consideration, viz., the proceeds of the note in question, agreed to assume and pay the debt.   These 15 makers were, in fact, the sureties or accommodation makers as to the Guarantee Company, and were entitled to the resulting legal rights and equities arising out of that relationship, and when Mrs. Wertheimer knew, or had notice, of such relationship she was bound to do nothing to endanger or destroy any of such rights, and from that time the Guarantee Company as to her was no longer a stranger in respect to such debt.   It was legally bound by contract to the makers of the note to pay it in the first instance, and as between them and itself it was the duty of the Company to either pay it, or in some manner protect the makers from legal process to

collect the note. The Company sought to perform this duty by contracting with Mrs. Wertheimer through Selling, and when doing so was not acting as a volunteer or a stranger to the legal relation existing between Mrs. Wertheimer and defendants.

In *Arnold* v. *Green,* 116 N. Y. 566 (23 N. E. 1), it is said that the terms "stranger" and "volunteer," as used with reference to the subject of "Subrogation," mean one who in no event resulting from the existing state of affairs can become liable for the debt, and whose property is not charged for the payment thereof, and cannot be sold therefor. The payment by one who is liable to be compelled to make it or lose his property will not be regarded as made by a stranger. When the person paying has an interest to protect, he is not a stranger: *Suppiger* v. *Garrels,* 20 Ill. App. 625; *Bennett* v. *Chandler,* 199 Ill. 97 (64 N. E. 1052); *Mavity* v. *Stover,* 68 Neb. 602 (94 N. W. 834). If, during the period of leniency granted in the extension agreement, defendants had tendered payment of the note, and it was accepted, and then they had sued the Guarantee Company upon its contract of indemnity with them, it, no doubt, could successfully plead in abatement its extension agreement with the payee; but, if defendants had been sued by Mrs. Wertheimer upon this note prior to the expiration of the time given in the extension agreement, they not only could have successfully pleaded the agreement as a defense, but they would have been bound to do so to preserve their right of immediate indemnity as against the Guarantee Company. Not to do so would be in effect confessing judgment upon a demand, the maturity of which had been extended for a valuable consideration paid by one in privity with the defendants.

No distinction whatever has been suggested by counsel for plaintiff, and we think none can be found, between the case at bar, and the case of *Union Life Ins. Co.* v. *Hanford,* 143 U. S. 187 (12 Sup. Ct. 437: 36 L. Ed. 118), cited and quoted in the opinion, and other cases cited there in the same connection, to which may be added the following, to the same effect: *Herd* v. *Tuohy,* 133 Cal. 55 (65 Pac. 139); *Wyatt* v. *Dufrene,* 106 Ill.

App. 214; *Stove Works* v. *Caswell*, 48 Kan. 689 (29 Pac. 1072);
*Franklin Sav. Bank* v. *Cochrane*, 182 Mass. 586 (66 N. E. 200:
61 L. R. A. 760); *Pratt* v. *Conway*, 148 Mo. 291 (49 S. W.
1028: 71 Am. St. Rep. 602); *Regan* v. *Williams*, 185 Mo. 620
(84 S. W. 959: 105 Am. St. Rep. 600); *Miller* v. *Kennedy*,
12 S. D. 478 (81 N. W. 906); *Iowa Loan & T. Co.* v. *Schnose*,
19 S. Dak. 248 (103 N. W. 22); *Merriam* v. *Miles*, 54 Neb. 566
(74 N. W. 861: 69 Am. St. Rep. 731); *Travers* v. *Dorr*, 60
Minn. 173 (62 N. W. 269); *George* v. *Andrews*, 60 Md. 26 (45
Am. Rep. 706).

For these reasons the motion should be disallowed.

REVERSED : REHEARING DENIED.